PEOPLE v SHAW

Docket No. 121831. Submitted March 5, 1991, at Lansing. Decided April 16, 1991, at 9:00 A.M. Leave to appeal sought.

Star L. Shaw was convicted of possession with intent to deliver 225 grams or more, but less than 650 grams, of cocaine following a jury trial in the Genesee Circuit Court, Robert M. Ransom, J. The defendant appealed, claiming that the trial court erred in denying her motion for suppression of certain evidence obtained in her apartment during the course of her arrest pursuant to a warrant for an unrelated narcotics charge.

The Court of Appeals *held:*

The trial court did not clearly err in denying the defendant's motion.

1. The police officers' initial entry into the apartment was proper because they were there to execute an arrest warrant, and the defendant consented to their entry when they informed her of the reason for their presence.

2. The protective sweep of the apartment undertaken by the officers was proper, given the crime for which the defendant was being arrested and the officers' reasonable belief that another person might have been in the apartment. An electronic scale containing cocaine residue which was observed during the protective sweep was properly seized under the plain view exception to the warrant requirement.

3. The defendant voluntarily consented to a further search of her apartment after the protective sweep was completed, rendering the cocaine uncovered in the search admissible.

Affirmed.

SEARCHES AND SEIZURES — PROTECTIVE SWEEPS — PLAIN VIEW.

Police officers may, incident to a lawful arrest, as a precautionary matter and without probable cause or reasonable suspicion, conduct a protective sweep of spaces immediately adjoining the place of arrest from which an attack could be immediately

REFERENCES

Am Jur 2d, Searches and Seizures §§ 88, 100.

Validity of seizure under Fourth Amendment "plain view" doctrine —Supreme Court cases. 75 L Ed 2d 1018.

launched, and evidence of illegal activity observed in plain view during the protective sweep properly may be seized.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, and *Donald A. Keubler,* Chief, Appellate Division, for the people.

*James Edward Jacobs,* for the defendant on appeal.

Before: GILLIS, P.J., and WEAVER and DOCTO-ROFF, JJ.

PER CURIAM. Following a jury trial, defendant was convicted of possession with intent to deliver 225 or more, but less than 650, grams of cocaine. MCL 333.7401(1) and (2)(a)(ii); MSA 14.15(7401)(1) and (2)(a)(ii). Defendant was sentenced to ten to thirty years' imprisonment. Defendant appeals as of right. We affirm.

Defendant's sole issue on appeal is that the circuit court clearly erred when it denied her motion to suppress certain evidence.

At an evidentiary hearing on defendant's motion, Sergeant Ronald Straw testified that on January 23, 1989, at approximately 5:30 P.M., he and four other officers went to defendant's apartment to execute an arrest warrant for defendant on a charge of delivery of over fifty grams of cocaine, of which she was the supplier. Another person was involved in that transaction and the police did not know where that other person was. The officers approached defendant's apartment with their weapons drawn and knocked. Defendant answered the door and identified herself. The officers advised defendant of their purpose, and she stepped back into her apartment. The officers asked if they could come in. Defendant allowed the officers to

enter, and they conducted a protective sweep of defendant's one-bedroom apartment. At that time, the officers did not know if anyone else was in the apartment. During the protective sweep, the police observed an electronic scale with what they believed to be cocaine residue on it. The police put their weapons away when they discovered that no one else was in the apartment. Defendant was advised of her *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), rights. The police asked defendant if she would consent to a search of her apartment, advising her that they believed that there was cocaine in the apartment. The police further advised defendant that if she did not consent they were going to attempt to get a search warrant. Defendant told the officers that she did not know whether she wanted to consent to the search. Straw called the prosecutor's office, and was informed that a search warrant would be prepared. Straw again asked defendant if she would consent, noting that he would go downtown and get a search warrant. Defendant then signed a consent form at 6:10 P.M., allowing the officers to search her apartment. During the search, the police discovered in a safe the twelve bags of cocaine that formed the basis for the instant conviction.

Defendant testified that she opened the door to the officers. Upon hearing that they had a warrant for her arrest, she backed into her apartment and asked if she could get her coat. Straw said "no," and asked if the officers could come in. Defendant allowed the officers to enter. The police let defendant review the arrest warrant and asked her a question about it. While defendant was reviewing the warrant, some of the officers began to search her apartment. One of the officers came back to the living room and stated that he had seen the

scale and powder. Straw asked defendant if they could search the apartment and defendant told the officers that they could not. Straw told defendant that they would get a warrant to do it and defendant told them to get their warrant. Defendant was handcuffed and read her rights. Defendant saw Straw using the telephone. Straw told defendant that it would be a while before the search warrant would be ready, but that she could still sign the consent form. Straw told defendant that she did not have to sign it if she was under duress, and defendant then refused to sign. Straw used the telephone again and told defendant that it would be a while because they were waiting for the warrant to be signed. Straw told defendant that if she signed the consent form they would tell the judge that she had consented. Believing that the warrant was inevitable, defendant signed the form.

The circuit court found that the officers' initial entry into the apartment was proper in that they were there to execute an arrest warrant and defendant had consented to their entry. The court further held it was reasonable for the officers to conduct a protective sweep, given the crime for which defendant was being arrested as well as the dangerous nature of the narcotics business. During the protective sweep, the officers saw the electronic scale and cocaine residue in plain view and therefore could seize it.

The circuit court also found that defendant was advised of her rights and on numerous occasions was told that she need not sign the consent form. The circuit court then found that it believed Straw's testimony that defendant did not sign the form under duress, and disbelieved defendant's testimony that the police promised her leniency if she signed the form. Hence, the court concluded that defendant voluntarily signed the consent.

A circuit court's ruling on a motion to suppress evidence will not be reversed unless it is clearly erroneous. *People v Fisher,* 166 Mich App 699, 703; 420 NW2d 858 (1988). A ruling is clearly erroneous where the reviewing court is firmly convinced that a mistake has been made. *Id.*

Defendant argues that the police improperly conducted a protective sweep because they had no reason to believe that others were present. In *Maryland v Buie,* 494 US —; 110 S Ct 1093, 1098; 108 L Ed 2d 276, 286 (1990), the United States Supreme Court stated:

> We also hold that as an incident to the arrest the officer could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Buie* was released after the circuit court rendered its decision. Applying *Buie* to the present facts, we hold that the officers could conduct a protective sweep of the bedroom when executing an arrest warrant in defendant's single-bedroom apartment. Once in the bedroom, the officers observed the electronic scale and cocaine residue in plain view and those items could be properly seized.

Defendant next claims that the totality of the circumstances indicates that her consent was involuntary. We hold that the circuit court's determination on this issue was not clearly erroneous. In doing so, we defer to the circuit court's findings

on the witnesses' credibility. MCR 2.613(C). While the police were initially armed, they subsequently put their weapons away. Moreover, while defendant initially declined to consent to the search, she subsequently did so because she believed that a warrant would be obtained. Under these circumstances, we hold that defendant's consent was voluntary. *United States v Myers,* 378 F2d 398, 399-400 (CA 3, 1967). See also LaFave & Israel, Criminal Procedure, § 3.10(b), pp 204-205.

Affirmed.