PEOPLE v BEUSCHLEIN

Docket No. 222317. Submitted January 8, 2001, at Detroit. Decided May 11, 2001, at 9:15 A.M.

Damon Beuschlein was charged in the Macomb Circuit Court with possession with intent to deliver less than fifty grams of cocaine, possession of a firearm during the commission of a felony, and domestic assault. The defendant moved to suppress as evidence the cocaine and firearm found in his home by the police officers who had come to defendant's address in response to a call regarding domestic violence. One of the police officers testified that he and his partner were dispatched to the defendant's home on the basis of an open telephone call from that location for the purpose of investigating a possible domestic incident then in progress that might involve guns or knives and that when they arrived at the defendant's home there was initially no response to their knocks, but they could hear what sounded like wrestling or moving around in the home. When a woman answered the door, the officers entered the home with their guns drawn, believing that someone might be in danger in the home and believing that they themselves might be in danger. The defendant was found in a bedroom and was handcuffed for everybody's safety. While in the home, the police discovered the cocaine in plain view. The court, John B. Bruff, J., denied the motion to suppress, finding that the officers believed that the call to the police regarding a domestic dispute at the defendant's home justified entry into the home and concluding that exigent circumstances existed. The defendant appealed by delayed leave granted.

The Court of Appeals *held*:

1. As a general rule, searches conducted without a warrant are unreasonable under the Fourth Amendment unless the police conduct falls under one of the established exceptions to the warrant requirement. One of the established exceptions to the warrant requirement is where there are exigent circumstances. Exigent circumstances arise where a police officer has probable cause to believe that a premises contains evidence or the perpetrators of a suspected crime and that there exists an actual emergency on the basis of specific and objective facts indicating that immediate

action is necessary to prevent the imminent destruction of evidence, to protect the police officer or others, or to prevent the escape of a suspect. Thus under the exigent circumstances exception, the elements of probable cause and reasonableness must be demonstrated.

2. In the present case, the officers had probable cause to believe that a crime was being committed, that the defendant's home might be harboring an individual who posed a threat to the officers or others, and that entry into the home was necessary to protect the safety of the officers and others who might be inside. The call to the police reporting a domestic incident possibly involving guns and knives, coupled with the sounds of wrestling that the officers heard while at the door of the home, provided the officers with specific and objective evidence that immediate action was necessary to protect the officers and others and provided the exigent circumstances that justified the officers' entry into the defendant's home without a warrant.

3. Even if the facts known to the police did not provide a sufficient basis to establish probable cause to believe that a crime had been committed, the officers had sufficient articulable facts on which to base a conclusion that someone inside the defendant's home needed immediate aid. The police may enter a dwelling without a warrant when they reasonably believe that a person within is in need of immediate aid, they posses specific and articulable facts that lead them to that belief, and they do no more than is reasonably necessary to determine whether a person is in need of assistance and to provide that assistance.

4. Because, under the circumstances, the police officers were justified in entering the defendant's home without a warrant and, thus, were lawfully in a place to observe the cocaine in plain view, the seizure of the cocaine without a warrant did not violate the defendant's Fourth Amendment rights.

Affirmed.

1. SEARCHES AND SEIZURES — WITHOUT A WARRANT — EXIGENT CIRCUMSTANCES EXCEPTION.

The police may enter a dwelling without a warrant pursuant to the exigent circumstances exception to the warrant requirement where they have probable cause to believe that a crime was recently committed on the premises and that the premises contains evidence or perpetrators of the suspected crime and where the police can establish the existence of an actual emergency on the basis of specific and objective facts indicating that immediate action is necessary to prevent the imminent destruction of evidence, to protect themselves or others, or to prevent the escape of a suspect.

2. SEARCHES AND SEIZURES — WITHOUT A WARRANT — EMERGENCY AID
    EXCEPTION.
    The police may enter a dwelling without a warrant when they reason-
    ably believe that a person within is in need of immediate aid, they
    possess specific and articulable facts that lead them to that belief,
    and they do no more than is reasonably necessary to determine
    whether a person is in need of assistance and to provide that
    assistance.

*Lynn Jeffrey Eastin* and *Rosemary A. Gordon,* for
the defendant.

Before: SAAD, P.J., and GRIFFIN and R. B. BURNS*, JJ.

GRIFFIN, J. Defendant appeals by leave granted an
order denying his motion to suppress evidence dis-
covered in a search of his home without a warrant.
We affirm. In doing so, we hold that the entry and
search without a warrant were reasonable under both
the *exigent circumstances* and *emergency aid* war-
rant exceptions.

I

Defendant is charged with possession with intent to
deliver less than fifty grams of cocaine, MCL
333.7401(2)(a)(iv), possession of a firearm during the
commission of a felony, MCL 750.227b, and domestic
assault, MCL 750.81(2). In the trial court, defendant
moved to suppress evidence of cocaine and a firearm[1]
found in his home by police responding to a 911 call
regarding domestic violence at defendant's address.

---

* Former Court of Appeals judge, sitting on the Court of Appeals by
assignment.

[1] Although defendant is charged with felony-firearm, no reference was
made to the discovery of a gun at the suppression hearing.

The only witness to testify at the evidentiary hearing that was held regarding defendant's motion was Officer John Dubois. Officer Dubois testified that he was dispatched in response to an "open 9-1-1 call," in which the caller failed to hang up. According to the dispatch, there was a domestic incident in progress, possibly involving guns and knives. When Officer Dubois arrived with his partner, Officer Noble, he went to the front door of defendant's mobile home and identified himself as a police officer. He knocked on the door, but no one answered. He then attempted to gain entry into the house, but the door was locked. He explained that he could hear "wrestling or moving around, a lot of shuffling around" inside the house. Approximately one or two minutes after Officer Dubois' arrival, a woman he identified as "Ms. Collier" answered the door. Officer Dubois ordered her to lie on the floor, and he and Officer Noble entered the home with their guns drawn. The officers spotted defendant in the back bedroom of the mobile home and ordered him to come out and lie on the hallway floor. Officer Dubois testified that he handcuffed defendant "for our safety and everybody's safety in the home," because at that point he still did not know how many people were in the house. The drugs were discovered "after everything started settling down." Officer Dubois testified that both powder and crack cocaine were discovered "in plain view" on the kitchen floor, front room, hallway, and on a tray in the bedroom.

Significantly, Officer Dubois testified that although there was no immediate indication that Ms. Collier was injured when she answered the door, he entered the home because he believed, on the basis of the 911

open call, that "there was an obvious problem there that—that people's lives could be in jeopardy or in trouble" and that he believed there was "danger . . . inside the home." When he entered the residence, he "had no idea if they were injured or not." He also opined that, in the context of a 911 domestic violence call involving weapons, he and his partner were putting themselves at risk. Dubois testified that he did not know there was cocaine in defendant's home before entering and had no reason to believe that evidence was being destroyed or that a suspect would escape.

On the basis of the above evidence, the trial court found there were exigent circumstances justifying police entry into defendant's home. The trial court ruled that Officer Dubois "believed that [the 911 call] justified entry and exigent circumstances existed and I think they—they did in his mind at the time, sufficient to permit the—the entry." The court further found that the evidence was in plain view and therefore lawfully seized. Accordingly, the trial court denied defendant's motion to suppress the evidence. Defendant now appeals from this evidentiary ruling.

II

We review de novo a trial court's ultimate decision on a motion to suppress. *People v Echavarria*, 233 Mich App 356, 366; 592 NW2d 737 (1999); *People v Marsack*, 231 Mich App 364, 372; 586 NW2d 234 (1998). However, the trial court's underlying findings of fact are reviewed for clear error. *Echavarria, supra* at 366; *People v Mendez*, 225 Mich App 381, 382; 571 NW2d 528 (1997).

Both the United States and Michigan Constitutions guarantee the right against unreasonable searches and seizures. US Const, Am IV, and Const 1963, art 1, § 11.[2] The lawfulness of a search or seizure depends on its reasonableness. *Illinois v McArthur*, 531 US 326; 121 S Ct 946; 148 L Ed 2d 838 (2001); *People v Snider*, 239 Mich App 393, 406; 608 NW2d 502 (2000). As a general rule, searches conducted without a warrant are per se unreasonable under the Fourth Amendment unless the police conduct falls under one of the established exceptions to the warrant requirement. *People v Borchard-Ruhland*, 460 Mich 278, 293-294; 597 NW2d 1 (1999); *People v Davis*, 442 Mich 1, 10; 497 NW2d 910 (1993); *Snider, supra* at 407.

A

Relevant to the present appeal is the "exigent circumstances" exception, characterized by our Supreme Court in *In re Forfeiture of $176,598*, 443 Mich 261, 271; 505 NW2d 201 (1993), as follows:

> Pursuant to the exigent circumstances exception, we hold that the police may enter a dwelling without a warrant if the officers possess probable cause to believe that a crime was recently committed on the premises, and probable cause to believe that the premises contain evidence or perpetrators of the suspected crime. The police must further establish the existence of an actual emergency on the basis of specific and objective facts indicating that immedi-

---

[2] In regard to the present search and seizure that occurred inside the curtilage of a dwelling house, absent compelling reasons, the Michigan and federal constitutional guarantees are coextensive. *Sitz v Dep't of State Police*, 443 Mich 744, 750-763; 506 NW2d 209 (1993). Cf. *People v Tejeda*, 181 Mich App 450, 461-468; 449 NW2d 908 (1989) (GRIFFIN, J., dissenting), vacated 439 Mich 873 (1991), (On Remand) 192 Mich App 635; 481 NW2d 814 (1992).

ate action is necessary to (1) prevent the imminent destruction of evidence, (2) protect the police officers or others, or (3) prevent the escape of a suspect. If the police discover evidence of a crime following the entry without a warrant, that evidence may be admissible.

See also *People v Cartwright*, 454 Mich 550, 559; 563 NW2d 208 (1997); *Davis, supra* at 10; *Snider, supra* at 408.

Thus, under the exigent circumstances exception, the elements of probable cause and reasonableness must still be demonstrated. *Cartwright, supra* at 558; *Davis, supra* at 24. Probable cause exists when the facts and circumstances known to the police officers at the time of the search would lead a reasonably prudent person to believe that a crime has been or is being committed and that evidence will be found in a particular place. *People v Williams*, 160 Mich App 656, 660; 408 NW2d 415 (1987). See also *Borchard-Ruhland, supra* at 293-294; *Davis, supra* at 10.

In the instant case, defendant argues that the 911 call alone does not constitute an exigent circumstance sufficient to justify an entry into his home without a warrant. Although there is a dearth of authority from Michigan courts on this issue, two federal court decisions are pertinent to our resolution of this question. In support of his argument, defendant relies on *United States v Meixner*, 2000 WL 1597736 (ED Mich, 2000), reconsideration den 128 F Supp 2d 1070 (2001), in which the defendant's live-in girlfriend called 911 during an argument between the couple. She hung up the telephone without speaking, and the defendant unplugged the telephone. The police responded to the defendant's residence and knocked

on the door. There was no sound coming from the home. The defendant answered, and the officers could see that his girlfriend was uninjured but appeared to be crying and intoxicated. The officers asked the defendant to let them in, and he belligerently refused. They then ordered the defendant to stand outside the house, telling him that they would arrest him if he refused. The defendant complied, and the officers entered the defendant's home. The defendant's girlfriend at that time denied placing the 911 call. The officers, not accepting the representation that there was no trouble at the residence, searched the house for weapons and for other persons in need of aid and found firearms in the bedroom and closet. Subsequently, a warrant was obtained and executed on the basis of the information gained in the entry into defendant's home, and the firearms were seized. The *Meixner* Court held the entry into and search of the defendant's home was unlawful, stating:

> Although there does not appear to be a case decided in this circuit on the question of whether a 911 call can provide a sufficient basis to find exigent circumstances justifying a warrantless home entry, the issue has been addressed by the Seventh Circuit in *United States v Richardson*, 208 F3d 626 (CA 7, 2000), on which the Magistrate Judge in this case placed heavy reliance. In *Richardson*, the Court concluded that the 911 emergency call in that case supported the Milwaukee police officers' reasonable belief that someone inside a home was in need of immediate assistance, and therefore exigent circumstances justified the warrantless search of the premises. The Court noted that "911 calls reporting an emergency can be enough to support warrantless searches under the exigent circumstances exception, particularly where, as here, the caller identified himself." *Id.* at 630. The 911 call in that case was placed by a man who

identified himself by name and reported that a man named "Lucky" had raped and murdered a woman who could be found in the basement of the subject premises. Although the Milwaukee Police Department had received a previous 911 call reporting a murder at the same address one week earlier, the officers who responded to the scene did not know about the prior, false alarm. When the officers arrived at the scene, they saw the defendant in front of the house holding a dog on a chain. The police officers called for others in the house to come out, and another male complied with that command. The officers then searched the entire house and observed drugs and drug-packaging paraphernalia, but found no injured person or corpse.

*In the case now before this Court, the 911 call conveyed no information. It was a hang-up call. There was no conversation at all, much less a report of an emergency.* Certainly, the possibility of an emergency justified a limited response by the police, consisting of a personal trip to the premises to investigate. Likewise, the dispatcher's speculation that "possibly a domestic dispute" existed warranted a further look. Upon arrival, however, more was required to support a warrantless entry into the defendant's home.

*    *    *

Unlike the situation in *Richardson*, the 911 call in this case announced no emergency. It was a hang-up call which at most gave rise to the possibility of an emergency. When the officers arrived at the scene, they encountered denials from the occupants of the residence that an emergency existed. Of course, the officers were not obliged to take the word of the subjects that no mischief was afoot; yet without some positive indication to the contrary—some objective manifestation of the existence of an emergency situation demanding immediate action—the officers were not justified in physically intruding into the sanctity of the home. [*Id.* at *7-*9 (emphasis added).]

By contrast, in *United States v Richardson*, 208 F3d 626 (CA 7, 2000), the Seventh Circuit Court of Appeals held that an entry without a warrant precipi-

tated by a 911 call fell within the exigent circumstances exception to the warrant requirement. The *Richardson* Court explained:

> Pointing out the risk of fraud or, at the very least, unreliable and unproven information from 911 callers, Richardson argues that a 911 call cannot by itself justify a warrantless search or furnish a reasonable basis for an officer to believe that someone inside the residence needs assistance. This line of argument goes too far, however; it invites us to adopt a presumption under which a 911 call could never support a finding of exigent circumstances. Many 911 calls are inspired by true emergencies that require an immediate response. Those factors have led both this court and others to conclude that 911 calls reporting an emergency can be enough to support warrantless searches under the exigent circumstances exception, particularly where, as here, the caller identified himself. See, *e.g.*, *United States v Cunningham*, 133 F3d 1070, 1072-73 [(CA 8, 1998)], cert den 523 US 1131; 118 S Ct 1823; 140 L Ed 2d 960 (1998); [*United States v*] *Salava*, 978 F2d [320 (CA 7, 1992)] at 321, 324-325. A 911 call is one of the most common—and universally recognized—means through which police and other emergency personnel learn that there is someone in a dangerous situation who urgently needs help. This fits neatly with a central purpose of the exigent circumstances (or emergency) exception to the warrant requirement, namely, to ensure that the police or other government agents are able to assist persons in danger or otherwise in need of assistance. See *United States v Moss*, 963 F2d 673, 678 (CA 4, 1992); *Wayne v United States*, 318 F2d 205, 212 (CA DC, 1963) (Burger, J.) ("The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency."). The efficient and effective use of the emergency response networks requires that the police (and other rescue agents) be able to respond to such calls quickly and without unnecessary second-guessing. As then-Circuit Judge Burger stated in *Wayne*, "[T]he business of policemen and firemen is to act, not to speculate or meditate on whether the report is correct. Peo-

ple could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process." 318 F2d at 212.

\*     \*     \*

[I]t was objectively reasonable for the officers to conclude that the situation presented exigent circumstances on these particular facts. This is not a case where the report indicated that the body had been languishing in the house for several days. Nor is it a case where other evidence might have made it clear that the victim was indeed dead, and not hovering on the verge of death. A *modus operandi* that is designed to save potential fatalities, where it is objectively reasonable to think that this is possible, is permissible. We note in this connection that Richardson did not introduce any evidence to rebut the officers' assertion that this was their practice, nor did he challenge their empirical assumption that lay witnesses were often wrong in their assumption that someone was beyond rescue.

Last, Richardson argues that to find exigent circumstances on these facts would lead to abuse of the 911 system: people with a grudge would have an incentive to make phony calls about their neighbors in order to allow the police to enter and search their neighbors' property without a warrant. . . . While we do not exclude the possibility of a case in which it would be objectively unreasonable for a police officer to rely on a 911 call, because of additional information available to the officer, this is not that case. It may even be possible, in those rare cases where a false emergency call is made, that the "victim" (that is, the person whose house is searched) might have a remedy against the caller. Whether or not this is true, we have no evidence indicating that the 911 system is abused so often that it is objectively unreasonable for the police to rely on a call like the one Carter made here. We therefore agree that the district court correctly denied Richardson's suppression motion because the warrantless search fell within the exigent circumstances exception to the warrant requirement. [*Richardson, supra* at 629-631.]

See also *Cunningham, supra* at 1072-1073; *Salava, supra* at 324-325.

In the present case, the circumstances are more closely analogous to *Richardson* than *Meixner*, the determinative and differentiating factor being the amount of information available to the police officers herein before their entry into defendant's mobile home. In *Meixner*, the district court expressly noted that the 911 call conveyed no information. It was a hang-up call with no conversation at all, much less a report of an emergency. In the instant case, on the other hand, there was a 911 call reporting an incidence of domestic violence. The caller also indicated that there were guns and knives on the premises. This information was conveyed to Officer Dubois, who reached the address and, while waiting for someone to answer his repeated knocking on the front door, heard noises inside that he characterized as "wrestling or moving around, a lot of shuffling around." Given these circumstances, Officers Dubois and Noble were justified in entering defendant's home without a warrant when Ms. Collier finally opened the door. From an objective standpoint, the 911 call reporting a domestic disturbance, the possible presence of weapons on the premises as reported by the caller, and the sounds of a scuffle within the home were sufficient to lead a reasonably prudent person to believe that a crime was being committed inside, that the mobile home may have been harboring an individual who posed a threat to the officers or to another, and that entry was necessary to protect the officers' own safety as well as the safety of someone inside. *In re Forfeiture, supra* at 261; *Williams, supra* at 660. We therefore hold that the evidence of

record—the 911 call in this case combined with Officer Dubois' personal observations immediately before entry—provided specific and objective evidence that immediate action was necessary to protect the police officers or others and justified the officers' entry into defendant's home without a warrant pursuant to the exigent circumstances exception.

B

Furthermore, even were we to assume arguendo there was an absence of probable cause to believe that a crime was being committed, the officers' entry without a warrant would be sanctioned under the emergency aid exception to the Fourth Amendment:

> [W]e hold that police may enter a dwelling without a warrant when they reasonably believe that a person within is in need of immediate aid. They must possess specific and articulable facts that lead them to this conclusion. In addition, the entry must be limited to the justification therefor, and the officer may not do more than is reasonably necessary to determine whether a person is in need of assistance, and to provide that assistance. [*Davis*, *supra* at 25-26.]

The police in this case had an unambiguous dispatch identifying defendant's home as the scene of a serious domestic disturbance. In addition, although they did not see any physical injury when Collier opened the door, they heard sounds of "wrestling" and had reason to believe there may be a gun or knives on the premises. Under these circumstances, the police had sufficient articulable facts on which to base their conclusion that someone inside defendant's home needed immediate aid. Compare *Davis*, *supra* (911 call was ambiguous with regard to location and

identity of caller and the alleged emergency was insufficient to invoke the emergency aid exception as justification for entry without a warrant into the motel room). For these reasons, the trial court did not err in denying defendant's motion to suppress the evidence.

III

Next, defendant argues that the search without a warrant of his entire house incident to his arrest violated his Fourth Amendment rights. Defendant contends the circumstances did not justify a protective sweep because there was no indication in the dispatch or from the situation at the home that there was a third party in his home. We disagree.

Having already established the legality of the officers' entry without a warrant into defendant's mobile home, the ensuing protective sweep of the premises, after defendant was handcuffed, was likewise permissible. The Fourth Amendment permits a properly limited protective sweep in connection with an in-home arrest if the police reasonably believe that the area in question harbors an individual who poses a danger to them or to others. *Maryland v Buie*, 494 US 325, 337; 110 S Ct 1093; 108 L Ed 2d 276 (1990); *Cartwright, supra* at 556-557; *Snider, supra* at 411; *People v Shaw*, 188 Mich App 520, 524-525; 470 NW2d 90 (1991). "Such a search is quick and limited, and conducted for the sole purpose of ensuring the safety of police officers and other persons." *Cartwright, supra* at 557.

Viewed from the perspective of Officer Dubois, *Cartwright, supra* at 559, the protective search of

defendant's mobile home was reasonable under the circumstances. The officer testified that when he arrived at the scene, he did not know whether additional people were present in the residence. Although police intervention was in response to a domestic dispute and Ms. Collier appeared to be uninjured, other persons or children could have been present in the home, justifying at least a walk through the house to confirm that no one else was in danger. *Richardson*, *supra* at 630; *Cartwright*, *supra* at 561-562; *Snider*, *supra* at 411; *Shaw*, *supra* at 524. Moreover, once in the mobile home, the officers observed the powder and crack cocaine in plain view, and that evidence therefore could be properly seized. *People v Champion*, 452 Mich 92, 101-102; 549 NW2d 849 (1996); *Shaw*, *supra* at 524. Defendant's argument in this regard is therefore without merit.

Affirmed.