# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEMAL UMAH SIMMONS,

        Defendant-Appellant.

UNPUBLISHED
December 17, 2015

No. 320216
Wayne Circuit Court
LC No. 12-008772-FH

Before: JANSEN, P.J., and CAVANAGH and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of possession with intent to deliver 450 to 999 grams of cocaine, MCL 333.7401(2)(a)(*ii*), and possession with intent to deliver 50 to 449 grams of cocaine, MCL 333.7401(2)(a)(*iii*). We affirm.

On February 25, 2012, at about 4:25 p.m., Officer Mark Burke of the Commercial Auto Theft Unit (CAT) of the Detroit Police Department observed a 2010 silver QX56 Infinity approaching the southbound John C. Lodge freeway. Burke became suspicious upon seeing the vehicle because a similar vehicle had been stolen in downtown Detroit a few months earlier. Burke called in the license plate number and was informed that there was no lienholder and the vehicle was titled out of Ohio. Burke knew that luxury vehicles were often stolen in Michigan and then driven to Ohio where they were "retagged." These cars were then driven back to Michigan where they were registered with the Secretary of State to make it appear that they were legitimately owned.

Burke briefly followed the vehicle but then another officer, Joseph Fortier, who was in an unmarked CAT vehicle, began following the QX56 Infinity. Fortier followed the vehicle until it parked across the street from 5627 16th Street in Detroit. Fortier and other officers observed defendant enter the home, stay for about a half hour, then leave and drive to a Save-A-Lot grocery store a short distance away. At the grocery store parking lot, the CAT unit's sergeant, Robert Wellman, ordered another officer to make contact with defendant. The officer ordered defendant out of his vehicle and handcuffed him. After the vehicle's door was opened, Wellman immediately saw that a fake vehicle identification number (VIN) had been placed over the original VIN and it was later determined that the vehicle had been reported stolen on July 27, 2011. While handcuffed, defendant consented to being searched and loose powder cocaine packaged in a plastic sandwich bag was discovered in his jacket pocket. Subsequently, a search

-1-

warrant was issued for 5627 16th Street where police discovered large amounts of cocaine, a digital scale, and items used to package cocaine.

Thereafter, defendant moved to suppress the evidence obtained during the search of his person in the grocery store parking lot on the ground that the officers had no probable cause to stop his vehicle. The prosecution opposed the motion, arguing that the traffic stop of the vehicle was proper because (1) the vehicle matched the description of a vehicle that had been stolen in Detroit recently, (2) this vehicle had no lienholder although it was a $60,000 vehicle and less than a year old, and (3) it was titled out of Ohio—which had been occurring in the "re-tagging" stolen vehicles. The prosecution argued that these three factors combined to provide a reasonably articulable suspicion to support the decision made by the police to stop this vehicle. The trial court agreed with the prosecution and denied defendant's motion, holding that the three factors relied upon by the police amounted to a sufficient basis for a brief investigatory stop. This decision is challenged on appeal.

Defendant argues that his Fourth Amendment rights were violated because the police lacked a reasonably articulable suspicion to conduct the investigatory stop and, thus, his motion to suppress the cocaine found in his pocket should have been granted. We disagree.

"A court's factual findings at a suppression hearing are reviewed for clear error, but the application of the underlying law . . . is reviewed de novo." *People v Slaughter*, 489 Mich 302, 310; 803 NW2d 171 (2011).

The United States and Michigan Constitutions both protect against unreasonable searches and seizures. "As a general rule, searches conducted without a warrant are per se unreasonable under the Fourth Amendment unless the police conduct falls under one of the established exceptions to the warrant requirement." *People v Beuschlein*, 245 Mich App 744, 749; 630 NW2d 921 (2001). One of the recognized exceptions to the Fourth Amendment's warrant requirement was set forth in *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). Police officers are free to conduct "a valid investigatory stop if they possess 'reasonable suspicion' that crime is afoot." *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996). "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch', but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *People v LoCicero*, 453 Mich 496, 502; 556 NW2d 498 (1996) (citation omitted). Whether the officer's suspicion was reasonable is determined on a case by case basis while considering the totality of the circumstances. *Id*. at 501-502. "[F]ewer facts are needed to establish reasonable suspicion when a person is in a moving vehicle than in a house . . . ." *Id*. at 502.

In this case, the prosecution argued that three specific facts gave rise to a reasonable suspicion that defendant was driving a stolen vehicle: (1) the vehicle matched the description of a vehicle that had been stolen in Detroit recently, (2) this vehicle had no lienholder although it was a $60,000 vehicle and was less than a year old, and (3) the vehicle was titled out of Ohio— which was consistent with the high incidence of "re-tagging" stolen vehicles. Defendant argues that, contrary to the trial court's conclusion, these factors were not "sufficiently specific enough to justify" the *Terry* stop.

In support of his argument, defendant relies on the holding in *Reid v Georgia*, 448 US 438; 100 S Ct 2752; 65 L Ed 2d 890 (1980), where the United States Supreme Court held that the police did not have a reasonable suspicion to stop the defendant, who had just exited a plane, merely because he came from a location where cocaine was trafficked heavily, arrived at a time when law enforcement activity was low, and had little luggage. *Id*. at 441. The Court reasoned that the rationale for the stop applied to a large number of "presumably innocent travelers, who would be subject to virtually random seizures were the Court to conclude that as little foundation as there was in this case could justify a seizure." *Id*. Defendant argues that, like in *Reid*, innocent travelers who happen to drive the same make and model of a car that had been reported stolen and is titled in Ohio would be subject to random stops if this Court finds that the police were justified in stopping defendant.

Here, however, more facts were present to suggest criminal activity than in *Reid*. In *Reid*, the prosecution was relying on the fact that the defendant fit the general description of a "drug courier profile." *Id*. at 440. The police in this case were relying on multiple, specific factors that were present in an ongoing car theft investigation. A similar vehicle had been stolen in the recent past and factors that had been present in hundreds of other similar, car thefts, namely that the new, expensive vehicle had no lienholder and was titled out of Ohio, were present with the vehicle defendant was driving. Given the pattern of luxury vehicles being stolen in Michigan, retagged with a false VIN, and titled out of Ohio, the officers were reasonable in their suspicion that the vehicle may have been stolen. As explained by the Court in *United States v Sokolow*, 490 US 1, 7-8; 109 S Ct 1581; 104 L Ed 2d 1 (1989), the concept of "reasonable suspicion" embodied in the Fourth Amendment is relatively simple. "The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human behavior; jurors as fact-finders are permitted to do the same—and so are law enforcement officers." *United States v Cortez*, 449 US 411, 418; 101 S Ct 690; 66 L Ed 2d 621 (1981). And, in this case, the trial court did not err in concluding that, considering the totality of the circumstances, *id*. at 417, the police had a reasonably articulable suspicion to conduct the brief investigatory stop. Thus, defendant's motion to suppress the cocaine found in his pocket was properly denied.

Affirmed.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Elizabeth L. Gleicher