*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOI MONEE ARAUZA,

Defendant-Appellant.

UNPUBLISHED
March 11, 2026
1:25 PM

No. 376568
Kent Circuit Court
LC No. 24-009260-FH

Before: SWARTZLE, P.J., and MALDONADO and ACKERMAN, JJ.

PER CURIAM.

Defendant, Joi Monee Arauza, appeals by delayed leave granted[1] the trial court's order denying her motion to dismiss the charge of operating while intoxicated, MCL 257.625(1), with a third-offense notice, MCL 257.625(9). Defendant argues that the arresting officer lacked reasonable suspicion to initiate the traffic stop that led to her arrest. We agree and reverse the trial court's order.

## I. BACKGROUND

On August 11, 2024, Kentwood Police Department Road Patrol Officer Matthew Zaiger was driving on 28th Street in Kentwood during his patrol shift. It was late at night, so traffic was very light. While driving westbound on 28th Street, Officer Zaiger noticed that defendant's vehicle had approached him from behind with its right turn signal activated. The vehicle drove behind him for no more than a quarter mile. Officer Zaiger testified that he was already driving over the speed limit, although he did not know his exact speed. Nevertheless, defendant's vehicle was approaching so quickly that Officer Zaiger felt that he was forced to move into the left lane to let it pass. The vehicle passed him and drove straight through two intersections with green lights, never turning off the turn signal. The turn signal was on for a total of about 30 to 40 seconds.

---

[1] *People v Arauza*, unpublished order of the Court of Appeals, entered September 3, 2025 (Docket No. 376568).

Officer Zaiger activated the lights on his police cruiser and initiated a traffic stop. From that traffic stop, the police obtained evidence that defendant was intoxicated, and defendant was subsequently charged with operating while intoxicated (OWI). She moved to dismiss the charge, arguing that the traffic stop violated the Fourth Amendment because it was not justified by reasonable suspicion and that the evidence of her intoxication should be suppressed.

During the proceedings in the trial court, Officer Zaiger testified that he had been a road patrol officer for about five months. He received some training on traffic violations but was unfamiliar with details of the Motor Vehicle Code, MCL 257.1 *et seq.*, such as the statute for improper lane use. He testified that the "sole reason" that he initiated the traffic stop was because defendant used her turn signal for an extended period without turning, which he viewed as a sign of intoxication. Officer Zaiger did not testify that defendant's driving was erratic or showed any signs of impairment beyond improper use of her turn signal. At the time of the stop, Officer Zaiger believed that defendant's improper use of her turn signal was a violation of the Motor Vehicle Code. However, he could not identify an applicable statute and testified that he had learned after the stop that extended use of a turn signal was not a traffic violation.

Officer Zaiger also testified that the speed limit on 28th Street was 40 miles per hour and that he was already driving over the speed limit when defendant's vehicle approached.[2] However, the official traffic control order set the speed limit on the relevant portion of 28th Street at 45 miles per hour, and Officer Zaiger's dashcam video showed that he also drove past a traffic sign stating that the speed limit was 45 miles per hour. Defendant's accident reconstruction expert referred to the timestamps and the location of defendant's vehicle in the dashcam video and calculated the vehicle's time-distance between each intersection. From those calculations, the defense expert determined that defendant was driving 45.8 miles per hour.

At the conclusion of the evidentiary hearing, the trial court found that defendant was not speeding and that her extended use of a turn signal was not a traffic violation. However, the court held that the stop was constitutional, explaining that Officer Zaiger's "articulable and reasonable suspicion was public safety" because "another vehicle may [have] turn[ed] out in front of defendant assuming that she would be turning right and thereby caus[e] a collision." Alternatively, there was reasonable suspicion that defendant was driving while impaired or "that there was some mechanical malfunction with her vehicle, both [of] which raise a public safety risk." According to the trial court, these public safety risks were encompassed in the scope of MCL 257.602 and gave Officer Zaiger reasonable suspicion to conduct a traffic stop. The trial court ultimately denied defendant's motion to dismiss, and this appeal followed.

## II. STANDARDS OF REVIEW

A trial court's decision on a motion to dismiss charges is reviewed for an abuse of discretion. *People v Brown*, 330 Mich App 223, 229; 946 NW2d 852 (2019). "A trial court necessarily abuses its discretion when it makes an error of law." *Id.* (quotation marks and citation omitted). "We review de novo as a question of law whether a search was supported by the

---

[2] At the evidentiary hearing, Officer Zaiger acknowledged that he was mistaken about the speed limit.

-2-

constitutional standard of reasonable suspicion." *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012).

## III. FOURTH AMENDMENT VIOLATIONS

Defendant argues that the traffic stop was not supported by reasonable suspicion that she was driving while intoxicated or probable cause to believe that she had committed a traffic violation. We agree.

"Both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Pagano*, 507 Mich 26, 31-32; 967 NW2d 590 (2021), citing US Const, Am IV; Const 1963, art 1, § 11. A traffic stop constitutes a seizure under the Fourth Amendment and must comply with the Fourth Amendment's reasonableness requirement. *Pagano*, 507 Mich at 32. The standard for whether a traffic stop was reasonable depends on whether the stop was to investigate suspected criminal activity or to address a traffic violation. Compare *Kansas v Glover*, 589 US 376, 380; 140 S Ct 1183; 206 L Ed 2d 412 (2020) (requiring reasonable suspicion for criminal investigation), with *Whren v United States*, 517 US 806, 810; 116 S Ct 1769; 135 L Ed 2d 89 (1996) (requiring probable cause for traffic violation). An officer's subjective motivation for initiating a traffic stop is irrelevant to the question of whether the stop violated the Fourth Amendment. *Whren*, 517 US at 813.

### A. REASONABLE SUSPICION FOR OPERATING WHILE INTOXICATED

Although the extended use of a turn signal might be a sign of intoxication, we conclude that the totality of the circumstances indicated that Officer Zaiger's traffic stop was not supported by reasonable suspicion.

A traffic stop for a criminal investigation needs to be supported only by reasonable suspicion. *Glover*, 589 US at 380. Reasonable suspicion exists when there is "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id*. (quotation marks and citation omitted). This requires more than a hunch but less than is required for probable cause. *Id*. Whether a stop is justified by reasonable suspicion is reviewed from the officer's perspective, allowing for "commonsense judgments and inferences about human behavior." *Id*. at 380-381 (quotation marks and citation omitted). "[F]ewer foundational facts are necessary to support a finding of reasonableness when moving vehicles are involved." *People v Christie*, 206 Mich App 304, 308-309; 520 NW2d 647 (1994). But the trial court still must consider the totality of the circumstances in cases involving investigative stops. *Id*. (citation omitted). "The objective facts known to the police officers who effected the traffic stop should be considered in determining whether the stop was justified by reasonable suspicion regardless of whether the officers subjectively relied on those facts." *People v Oliver*, 464 Mich 184, 199; 627 NW2d 297 (2001).

It is a crime to operate a motor vehicle while intoxicated, MCL 257.625; however, officers must have more than a conclusory allegation of drunk driving "to pass constitutional muster." *Pagano*, 507 Mich at 35. In *Pagano*, a bystander made a 911 call to report that the defendant was yelling at her children and appeared "obnoxious" as she got into her car and drove away. *Id*. at 29-30. From this behavior, the caller suspected that the defendant was intoxicated. *Id*. The police

caught up with the defendant's vehicle and initiated a traffic stop, even though the officer never saw her commit any traffic violations. *Id*. at 30. Our Supreme Court held that the officer did not have the reasonable and articulable suspicion necessary to justify a stop because "there was no report of even a minor traffic infraction" and "no support for the conclusion that 'appearing to be obnoxious' and yelling at one's children creates a reasonable and articulable suspicion that one is intoxicated." *Id*. at 34-35. There were no other details to support a belief that the defendant was intoxicated, and commonsense inferences led to the conclusion "that many parents yell at their children, even without the aid of intoxicants." *Id*. at 34.

Our Supreme Court distinguished *Pagano* from the circumstances in *Navarette v California*, 572 US 393, 395; 134 S Ct 1683; 188 L Ed 2d 680 (2014), in which a 911 caller reported that a suspected drunk driver had run the caller off the road. The *Navarette* Court explained that, under a commonsense approach, some behaviors are recognized "as sound indicia of drunk driving," such as weaving all over the road, crossing over the center line, or nearly causing a collision, can give rise to a reasonable suspicion that the driver is intoxicated. *Id*. at 402. Accordingly, the Court held that there was reasonable suspicion to justify the stop of the defendant's vehicle after reports that the defendant had run another vehicle off the road because such conduct suggested "lane-positioning problems, decreased vigilance, impaired judgment, or some combination of those recognized drunk driving cues." *Id*. at 403. The Court cautioned that some traffic infractions, such as driving without a seatbelt or slightly over the speed limit, "are so tenuously connected to drunk driving that a stop on those grounds alone would be constitutionally suspect." *Id*.

This Court has previously addressed the unusually long use of a turn signal in *Christie*, 206 Mich App at 309. In *Christie*, a police officer noticed the defendant's vehicle drifting left and right and driving over the lane markers on the road. *Id*. at 306. The defendant "activated his left turn signal, traveling past numerous driveways and one side street before turning south. . . ." *Id*. The turn signal was on for about two-tenths of a mile before the turn. *Id*. The officer initiated a traffic stop "to investigate defendant's extended use of his turn signal" and subsequently learned that the defendant was intoxicated. *Id*. This Court held that swerving, driving on lane markers, and activating the turn signal so early were "classic indicia of an intoxicated driver." *Id*. at 309. Under the totality of the circumstances, the officer had reasonable suspicion for the stop. *Id*.

The present case is distinguishable from *Navarette* and *Christie*. Defendant took only two actions that indicated that she might have been driving while intoxicated: she drove straight through multiple intersections with her turn signal on, and she approached Officer Zaiger's cruiser from behind so quickly that he felt the need to change lanes.[3] She may have scared another driver, but there was no erratic swerving or driving over lane markers as in *Christie*, 206 Mich App at 306, and defendant did not run anyone off the road like in *Navarette*, 572 US at 395.

---

[3] As noted, Officer Zaiger incorrectly thought that the speed limit was 40 miles per hour, so it is possible that defendant was traveling at a careful and prudent speed when she suddenly found herself behind a police cruiser driving *under* the speed limit.

Additionally, any similarity between *Christie* and this case does not compel a different result. Both defendants used their turn signals for too long, but the officer in *Christie* saw the defendant activate his turn signal early and eventually make a turn. *Christie*, 206 Mich App at 306. That behavior indicated poor judgment or spatial orientation, which was consistent with intoxication. *Id*. Officer Zaiger, on the other hand, noticed that defendant's turn signal was already on when she was behind him, and she never made a turn before the traffic stop. There are plenty of sober explanations for this behavior—the inability to hear the signal click or see the light on the dashboard, distractions in the car, or an innocent lapse in memory. Further, in *Christie* the extended use of the turn signal was one of several factors that under the totality of the circumstances led to a reasonable suspicion that the driver was intoxicated, *id*. at 309; whereas, the "sole reason" for the stop in the present case was defendant's extended use of the turn signal.

The trial court emphasized the public safety risk caused by defendant driving through intersections with her turn signal activated. However, the stop of defendant's vehicle occurred late at night, and the record reflects that the roadway was bereft of other vehicles. Similarly, there was no evidence of pedestrians in the area. Given the time of day, lack of pedestrians, and lightness of the traffic, defendant's extended use of her turn signal did not, in practical terms, put anyone at risk. We acknowledge that in a different case, the extended use of a turn signal on a busy roadway or in a congested part of a city may create a risk of danger justifying a stop. However, under these circumstances, we do not conclude there was any such justification.

The facts of *Pagano*, 507 Mich at 29-30, more closely match this case. Defendant's extended use of her turn signal may be described as "obnoxious," like the driver's interactions with her children in *Pagano*. See *id*. at 35. But the extended use of a turn signal alone is not enough to establish reasonable suspicion that a driver is intoxicated and warrant the stop of a vehicle. Therefore, Officer Zaiger's traffic stop was not justified by reasonable suspicion that defendant was driving while intoxicated.

## B. PROBABLE CAUSE FOR TRAFFIC VIOLATIONS

During the proceedings in the trial court, the prosecutor suggested that defendant may have committed a number of traffic violations that justify the stop, including failure to turn off her turn signal, failure to obey an officer's traffic directions, and speeding. We conclude that there was no probable cause to believe that defendant committed any of those infractions.

Generally, even if the police do not suspect any criminal activity, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 US at 810. "Probable cause exists when the facts and circumstances known to the police officers . . . would lead a reasonably prudent person to believe that a [violation] has been or is being committed. . . ." *People v Beuschlein*, 245 Mich App 744, 750; 630 NW2d 921 (2001).

In this case, Officer Zaiger had no probable cause to justify the traffic stop under MCL 257.648 for defendant's use of her turn signal. The Motor Vehicle Code only addresses when a turn signal is *required*, not when it is prohibited. Under MCL 257.648(1), "[t]he operator of a vehicle or bicycle upon a highway, before stopping or turning from a direct line, shall first determine that the stopping or turning can be made in safety and shall give a signal as required in

this section." Neither MCL 257.648 nor any other statute addresses when a person must shut off the signal or refrain from using it.

There also was no probable cause to justify the stop under MCL 257.602 for failing to obey an officer's directions. According to MCL 257.602, "[a] person shall not refuse to comply with a lawful order or direction of a police officer when that officer, for public interest and safety, is guiding, directing, controlling, or regulating traffic on the highways of this state." This statute does not apply in this case because Officer Zaiger was on a routine road patrol and was not directing traffic at the time that he conducted the traffic stop. Furthermore, there was no evidence that defendant refused to comply with any of his orders. The trial court indicated that reasonable suspicion existed partly because defendant's driving created a public safety risk encompassed in MCL 257.602, but we find no authority to support the conclusion that public safety concerns alone can justify a targeted traffic stop without reasonable suspicion or probable cause to believe that the driver violated a law.

Finally, there was no probable cause to believe that defendant was speeding, and indeed, the prosecutor makes no argument regarding speeding on appeal. The speed limit on the relevant section of 28th Street was 45 miles per hour. The accident reconstruction expert's calculations, which the trial court adopted, indicated that defendant was driving only 45.8 miles per hour. While it is possible to commit a traffic violation by "speeding" even if driving at or under the posted speed limit,[4] there was not probable cause to believe that defendant was not driving at a careful and prudent speed.

Accordingly, there was not probable cause that defendant committed any traffic violations justifying the traffic stop. Therefore, we conclude that the traffic stop violated the Fourth Amendment because there was neither reasonable suspicion nor probable cause justifying the seizure of defendant's vehicle.

### C. EXCLUSIONARY RULE

Defendant further argues that Officer Zaiger's mistake of law regarding the justification for the traffic stop was unreasonable and that evidence of her intoxication should be suppressed under the exclusionary rule. We agree.

When police conduct violates a defendant's Fourth Amendment rights, a trial court may apply the exclusionary rule to exclude from the defendant's trial any evidence obtained through the constitutional violation. *United States v Leon*, 468 US 897, 906; 104 S Ct 3405; 82 L Ed 2d

---

[4] MCL 257.627(1) provides as follows:

> An individual operating a vehicle on a highway shall operate that vehicle at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and of any other condition existing at the time. An individual shall not operate a vehicle on a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead. . . .

677 (1984). The purpose of this rule is "to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Id*. (quotation marks and citation omitted). "Whether the exclusionary sanction is appropriately imposed in a particular case . . . is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." *Id*. (quotation marks and citation omitted).

Probable cause or reasonable suspicion may arise from an officer's objectively reasonable mistake of fact or law. *Heien v North Carolina*, 574 US 54, 61; 135 S Ct 530; 190 L Ed 2d 475 (2014). On the other hand, "a seizure based on an officer's *unreasonable* interpretation of the law warrants application of the exclusionary rule," because suppression deters police from attempting to gather evidence in clear violation of unambiguous law on the basis of subjective and erroneous interpretations of law. *People v Lucynski*, 514 Mich 888, 891; 9 NW3d 327 (2024). Typically, "objectively reasonable mistakes of law occur in exceedingly rare circumstances in which an officer must interpret an ambiguous statute." *People v Lucynski*, 509 Mich 618, 652; 983 NW2d 827 (2022).

At the time of the traffic stop, Officer Zaiger mistakenly believed that the speed limit on 28th Street was 40 miles per hour and that the extended use of a turn signal was a violation of the Motor Vehicle Code. Neither law was ambiguous. The traffic control order clearly set the speed limit for the relevant section of 28th Street at 45 miles per hour, and the speed limit was also posted on the street itself. Officer Zaiger likewise mistakenly believed that the extended use of a turn signal was a traffic violation. As explained previously, the Motor Vehicle Code only addresses when a turn signal is required, not when a signal is prohibited. Officer Zaiger's general inexperience as a police officer and unfamiliarity with traffic law resulted in honest but objectively unreasonable mistakes.

Application of the exclusionary rule in this case will help deter law enforcement agencies from placing new officers on road patrols without sufficient training on the Motor Vehicle Code. This deterrent effect justifies suppression of any evidence of defendant's intoxication obtained as a result of Officer Zaiger's traffic stop, which would leave no basis to maintain the OWI charge against her. The trial court made a mistake of law when it held that no Fourth Amendment violation occurred and the trial court's order denying defendant's motion to dismiss on that basis was, therefore, an abuse of discretion. See *Brown*, 330 Mich App at 229.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Allie Greenleaf Maldonado