# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAVID LEE FARRIS,

        Defendant-Appellant.

UNPUBLISHED
March 22, 2016

No. 324324
Macomb Circuit Court
LC No. 2014-000433-FC

Before: TALBOT, P.J., and WILDER and BECKERING, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(b)(*ii*) (sexual penetration and victim at least 13 but less than 16 years of age and related to the defendant). The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to concurrent sentences of 60 to 120 years' imprisonment for each conviction. We affirm defendant's convictions, but remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEEDINGS

## A. RELEVANT FACTS

This case arises from the victim's allegations that defendant, her stepfather, sexually assaulted her when she was 15 years old. On May 8, 2013, the victim's mother was out of town and defendant entered the victim's room in the late evening. He was not wearing any clothing, had a jacket covering his penis, and was carrying candy and what appeared to be a gun. Defendant held the object that resembled a gun to the victim's head and told her to shut up. Defendant took the victim to the basement and ordered her to remove her clothing. He told the victim to lie down and he licked the victim's vagina and touched her breasts. He then ordered the victim to get on her knees and suck his penis, and the victim complied. Afterwards, defendant gave the victim a pill and told her to swallow it with beer, but the victim hid the pill in her mouth and put it in the couch when defendant was not looking. She later put the pill in a makeup case in her room. The victim asked defendant whether he had ever done the same thing to his older daughters, and defendant said that he had and "they loved him for doing that to them." Defendant was smoking something out of a pipe. He eventually allowed the victim to go upstairs to her room.

-1-

Later that night, defendant again came into the victim's room. Defendant was naked and he got on top of the victim and started choking her. He told the victim to get on her knees and take off her clothing. Defendant said that he was going to take the victim's virginity and he tried to use a condom, but the victim said that she would "rather just do what happened in the basement." Defendant then told the victim to get on her knees, and after she removed her clothing, he told her to suck his penis again. Defendant ejaculated in the victim's mouth and she spit out the semen next to her bed.

The next morning, the victim got herself and her younger sisters ready for school. The victim did not tell anyone at school what had happened. After school, she called her mother, but did not tell her what had happened. The victim called her grandmother and two of her cousins and told them what happened, but no one came to help her. The victim then went home and packed clothes for herself and her sisters. She went to a neighbor's house and asked if she could go inside because she did not know if defendant was coming home, but the neighbor would not let her inside of his house, so the victim called the police from outside. The neighbor testified that the victim appeared agitated and nervous, and she said that she had been sexually abused by her stepfather the night before. The neighbor did not observe any physical injuries to the victim.

After the police arrived, the victim told them what had happened and let them inside her house. The victim directed the police to the area where she spit out the semen; the victim later told the police about a gray shirt that defendant had used to wipe himself and the floor.

Officer Brett Mosher, of the Centerline Police Department, was dispatched to the victim's location. The victim was crying, upset, and scared. Officer Mosher observed cuts on the inside of the victim's lip. The victim took Officer Mosher to her house, and he entered in order to see if the suspect was there and to secure the residence for any evidence. After a search warrant was obtained, the evidence was collected.

The victim was taken to be examined by a Sexual Assault Nurse Examiner (SANE). Marnie Vandam examined the victim. The victim recalled telling the nurse that she felt little cuts on the inside of her mouth and her neck hurt from being choked. Vandam did not observe any physical injuries on the victim, including her lips and mouth, but she had areas of tenderness on her neck, throat, chest, arms, and back. Vandam swabbed the victim's mouth, vagina, anus, and breasts, and flossed her teeth.

Sergeant William Dempsey, of the Centerline Police Department, took pictures and collected evidence from the victim's house. Sergeant Dempsey collected the makeup compact and the pill inside of it, which was identified as Seroquel; the pill did not appear to be fresh. He also collected an area of the carpet where the victim said that she spit out the semen, a pack of Seroquel pills with one missing, a lighter that resembled a gun, packs of Seroquel prescribed to defendant, and a gray shirt that the victim said defendant had used to wipe himself and the floor.

Jodi Corsi, a forensic scientist with the Michigan State Police, processed the evidence that was collected in this case for the presence of bodily fluids. She testified that the victim's vaginal swabs were negative for saliva, and the victim's oral swabs were negative for sperm cells, but two sperm cells were found on the dental floss. In order to extract DNA from sperm

cells, generally 30 to 100 sperm cells are required. Seminal fluid and sperm cells were also found on the gray shirt. The carpet sample also tested positive for saliva and seminal fluid.

Jennifer Morgan, also a forensic scientist with the Michigan State Police, processed the DNA in this case and testified that the DNA profile from the sperm on the gray shirt and the tan carpet matched defendant's DNA type. The victim also could not be excluded as a donor of the DNA found on the carpet. Morgan was unable to produce a DNA type from the sperm on the dental floss because of the minimal amount of male DNA. Morgan testified that only the victim's DNA was detected on the dental floss, so defendant was excluded as the donor, as all males were excluded. Morgan was unable to say that defendant's sperm was not on the dental floss.

Defendant was arrested on May 18, 2013. Mark O'Riordan, a United States Secret Service agent, conducted a forensic interview with defendant.[1] Defendant initially stated that he had no sexual contact with the victim, but later in the interview stated that he had woken up on the couch to the victim putting his penis in her mouth and he stopped her. O'Riordan testified that he is not permitted by the policies of the Secret Service to videotape or audio record interviews. O'Riordan testified that he informed defendant that he could not videotape the interview and defendant agreed to continue the interview.

## B. PROCEDURAL HISTORY

### 1. PRE-TRIAL

A felony complaint was issued on May 10, 2013, accusing defendant of two counts of third-degree CSC, MCL 750.520d(1)(b) (force or coercion). The prosecution requested the first adjournment of the preliminary examination on May 29, 2013, in order to obtain the victim's appearance. On June 20, 2013, the next scheduled date for the preliminary examination, the victim was present, but defendant requested a new attorney, so the preliminary examination was adjourned. On July 9, 2013, defendant's counsel requested an adjournment because she did not have several documents, including the police report and the SANE report, and defendant consented to the adjournment. There was also an adjournment on August 20, 2013, because defendant requested a new attorney. On August 27, 2013, the prosecution was again ready to proceed with the preliminary examination, but defendant requested another attorney. On September 17, 2013, defendant requested another new attorney and the prosecution requested a competency examination, with which defense counsel agreed and which the trial court ordered.

On January 29, 2014, the parties stipulated that defendant was found to be competent and the preliminary examination was held. The prosecution informed the trial court that after the victim's testimony she would be seeking to amend the charges and stated that, initially, she was not certain that defendant was the victim's stepfather. The prosecutor also stated that she would be seeking to add charges, and defense counsel agreed that he was aware of the prosecutor's

---

[1] Although not disclosed to the jury, O'Riordan administered a polygraph examination to defendant.

-3-

intent to amend the complaint after the preliminary examination. After the victim testimony, including her testimony that defendant was her stepfather, the prosecution moved to amend the complaint to three counts of first-degree CSC based on relationship. In response, defendant argued that there was no evidence that corroborated the victim's allegations. The trial court granted the motion to amend and defendant was charged with three counts of first-degree CSC.

At defendant's circuit court arraignment on February 10, 2014, he requested a polygraph examination so the trial court adjourned the matter for three weeks. On May 6, 2014, the date set for trial, defendant requested a new attorney. Defendant claimed that he had genital warts and wanted pictures taken of his penis and a lineup conducted. The trial court agreed that testing for sexually transmitted diseases (STDs) was necessary and informed defendant that trial would need to be adjourned "for some period of time." Defendant agreed that the delay was attributed to his request. On May 14, 2014, the trial court indicated that it would enter an order for testing for human papillomavirus (HPV). On May 28, 2014, defendant had not yet been tested, and defense counsel argued that the issue might be moot because a medical director at the Macomb County Health Department said that HPV would not necessarily be transferred through fellatio and could take years to manifest. Defendant's counsel also informed the trial court that he had told defendant that he would not likely be available for trial until September. The next day, defendant informed the trial court that he wanted to take the oral test for HPV. Trial was set for September 3, 2014 .

On July 8, 2014, defendant requested a new attorney. Defendant's counsel informed the trial court that the health department would only conduct an oral test for HPV and the trial court stated that it would order the test.

Defendant's final attorney filed several motions on defendant's behalf, including a motion for testing for STDs, a motion for discovery, inspection, and preservation of evidence, a motion to dismiss for lack of a speedy trial, a motion to exclude defendant's alleged statement to O'Riordan, a motion to suppress the evidence obtained in the search, and a motion to suppress the post-polygraph admission.

At a hearing on July 21, 2014, the prosecutor informed the trial court that defendant had declined the HPV testing and the trial court stated that because defendant declined to take the only FDA-approved test it would not order any other testing. Defense counsel argued that a broad "spectrum of testing" was necessary, but the trial court denied the request. However, the trial court stated, "Go find somebody to test him . . . and come back and tell me about it." The trial court stated that it would assist defendant with the costs associated with the testing, but would not "solicit anybody further."

On August 25, 2014, the trial court denied defendant's motion exclude his statement on the basis that it was not recorded, and ruled that it would instruct the jury according to the applicable statute. The trial court similarly denied defendant's motion to exclude the substance of his alleged statement on the basis that O'Riordan's testimony regarding what defendant said would not be an exact or precise statement attributable to defendant. The trial court denied defendant's motion to dismiss for lack of a speedy trial, finding that the delays occasioned by defendant's requests for new counsel were attributable to defendant. The trial court also denied

defense counsel's request for an adjournment to find someone qualified to testify as a medical expert regarding STDs, and his request for a photographic lineup of his body.

On September 3, 2014, defense counsel informed the trial court that he was unable to locate a proper expert regarding medical testing and requested an adjournment. The prosecutor read into the record the letter from the Department of Human Services (DHS), stating that there is no FDA-approved blood test to detect HPV in men. DHS stated that defendant had denied the oral HPV testing and wanted a physical examination, which would only determine the presence or absence of genital warts. The trial court found that defendant waived the request for an HPV test and denied the motion to adjourn.

## 2. EVIDENTIARY HEARING

Before trial, an evidentiary hearing was held regarding the search of defendant's home. Officer Mosher testified that the victim's neighbor called the police and when Officer Mosher arrived, the neighbor stated that the victim was afraid to go home because her father abused her. The victim appeared to be afraid and distraught. The victim stated that her stepfather sexually assaulted her and she had cuts on the inside of her lip. The victim took the officers to her home where the assault occurred. The victim stayed a house away with the corporal while the other officers searched the residence for the suspect; the officers were not sure if the suspect was in the home. The officers entered the home in order to determine whether the suspect was there and to preserve the scene. The officers were instructed by their superior to sweep the residence and secure it to preserve any evidence. A search warrant was obtained later that day and the evidence technicians were called to process the scene. The prosecutor stated that she could question the officer about the victim's statements that led to the search warrant, if defendant was challenging the validity of the search warrant. Defense counsel did not ask any questions. The trial court found that there was a basis for the initial entry into the home and it denied the motion to suppress the subsequent search and the fruits of that search.

## 3. *WALKER*[2] HEARING

During trial, a *Walker* hearing was held regarding the voluntariness of defendant's statements and whether his waiver was knowingly and intelligently made. O'Riordan testified that, at defendant's request, he interviewed defendant on February 27, 2014, at the Centerline Police Department. O'Riordan had discussed defendant's criminal history with someone before the examination. O'Riordan did not threaten or coerce defendant, and defendant indicated that he had ample sleep and had eaten breakfast. Defendant appeared to comprehend what was taking place. Defendant signed a form indicating that he was fit for the interview, a form acknowledging and waiving his *Miranda*[3] rights, and consented to the polygraph examination. O'Riordan was instructed by the Secret Service to ignore the Michigan law requiring audio and visual recording of interrogations. As a result, O'Riordan informed defendant that while the

---

[2] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

room had audio and visual capabilities, he would not be recording the examination. The interview was approximately four hours long, and approximately three hours elapsed between defendant stating that nothing happened and defendant's admission. O'Riordan was aware that defendant was over 18 years of age. Defendant waived the right to have his attorney present. O'Riordan went through every step of the process with defendant. Lieutenant Thomas Costello, of the Centerline Police Department, testified that he was aware that defendant was born in 1967 and had multiple prior arrests and convictions.

Defendant testified that none of his first three attorneys nor attorney Azhar Sheikh ever discussed the polygraph examination or its components with him. Defendant testified that Sheikh said that he would be present for the polygraph examination, but he was not there. Defendant claimed that he did not waive his right to an attorney, but instead that, after he requested his attorney at the interview, the officer said that they did not need the attorney because the interview would be recorded. Defendant testified that he told O'Riordan that he took pain medication and had posttraumatic stress disorder.

After finding that the polygraph was not recorded, as required by law, that defendant's attorney should have been present and requested that it be recorded, and that the failure to be present and make that request was ineffective assistance of counsel, the trial court ruled that defendant's statement would not be admitted. In response, the prosecution argued that under MCL 763.9 the failure to record does not preclude the statement from being admitted, but that rather, an instruction about the failure to record should be given to the jury. The next day, the trial court reversed its ruling, finding that the exclusive remedy for failing to record was the jury instruction and that recording was not a right conferred on a defendant. Therefore, according to the trial court, it did not matter whether defendant was informed of the law by counsel. The trial court further ruled that defense counsel's failure to be present was not ineffective assistance of counsel and, even if it did constitute ineffective assistance of counsel, suppression was not the appropriate remedy. The trial court declined to hold a *Ginther*[4] hearing regarding the attorney's failure to be present. Defendant was permitted to call Sheikh as a witness regarding the voluntariness issue. Sheikh testified that he was aware of the polygraph examination, but was not present. Defendant knew that Sheikh would not be present. Sheikh made it clear that defendant did not have to take the polygraph examination and advised him not to make any statement because there was nothing to gain, but defendant insisted on taking the polygraph examination. The trial court ruled that the waiver was knowingly, voluntarily, and understandingly given and that defendant's statement would be admitted at trial.

## 4. TRIAL

After the victim's direct testimony at trial, defendant moved for a mistrial, arguing that the testimony that he had sexually assaulted his daughters was intentionally elicited MRE 404(b) evidence, the testimony was not limited, and it was so prejudicial that it could not be cured by an instruction. The prosecution argued that this testimony had been introduced at the preliminary examination, defendant never filed a motion in limine regarding the testimony, and the jury

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

could be instructed that other bad acts should not affect its decision. The trial court denied the motion, stating that the defense was aware of the testimony, the defense never filed a motion in limine, and there was no evidence regarding the age of defendant's other children such that the testimony necessarily constituted MRE 404(b) evidence or the jury would know that it was "another bad act."

Defendant did not testify at trial. The trial court denied defendant's motion for a directed verdict. Defendant objected to the trial court providing the instruction to the jury that the victim's testimony need not be corroborated and argued that the instruction lessened the prosecution's burden. The trial court ruled that it was a standard instruction and that it would be given. The trial court instructed the jury that "[t]o prove these charges it is not necessary that there be evidence other than the testimony of [the victim], if that testimony proves guilt[] beyond a reasonable doubt."

Defendant requested an instruction regarding the failure to record. The trial court reviewed the instruction requested by defendant and stated that it would give the following instruction:

> It is the law of this state that when [defendant] was interrogated and given his Miranda rights the law enforcement official interrogating him should have made a time stamped audio visual recording of the entire interrogation. You the jury may consider the absence of a recording in evaluating the evidence relating to [defendant's] statement.

The trial court noted defendant's objection and request for his own version to be read to the jury. The trial court's instruction was given to the jury. The jury found defendant guilty of all three charges.

## 5. SENTENCING AND MOTION FOR ADDITIONAL SCIENTIFIC TESTING

At sentencing, defendant agreed that the presentence investigation report was factually accurate and that the prior record variables (PRVs) were properly scored. The prosecution argued that offense variable (OV) 11 should be scored at 50 points for counts two and three. Defendant argued that the offenses for which he was convicted could not be scored under OV 11, and that OVs 11, 12, and 13 should be scored at zero points. The trial court disagreed and assessed 50 points for OV 11. The prosecution argued that OV 12 should be scored at five points based on defendant's act of fondling the victim's breasts, which occurred within 24 hours and did not result in a separate conviction. Defendant argued that there were no contemporaneous criminal acts and the prosecution could have charged the separate act. The trial court scored OV 12 at five points.

Defendant argued that OV 1 was improperly scored at five points because no weapon was used. The trial court, however, found that five points was proper because a weapon was implied by the lighter shaped like a gun. Defendant argued that OV 3 was improperly scored at five points because there was no bodily injury. The trial court found that five points was appropriate based on the victim's testimony that she had abrasions on her lip and defendant put his hands around her neck leaving soreness. The trial court also assessed 10 points under OV 4 and 10

points under OV 10. Defendant's total OV score was 85 and the guidelines range was 225 to 750 months to life, which reflected defendant's habitual fourth offender sentencing. The trial court sentenced defendant to 60 to 120 years' imprisonment. The trial court denied defendant's motion for additional scientific testing of the semen, finding, based on the testimony of the experts, that additional testing would not provide any exculpatory or inculpatory evidence.

## II. ISSUES RAISED ON APPEAL

## A. ADMISSION OF DEFENDANT'S STATEMENTS

First, defendant contends that (1) the statements he made during the interview with O'Riordan were not voluntary, (2) his waiver did not extend to the post-polygraph examination during which his alleged statements were made, (3) his statements should be suppressed because they were not recorded, and (4) the trial court compounded the error by refusing to allow defense counsel to elicit testimony regarding the interrogation and failing to instruct the jury regarding law enforcement's failure to preserve evidence. We disagree.

## 1. VOLUNTARINESS OF DEFENDANT'S STATEMENT

"Statements of an accused made during a custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waives that Fifth Amendment right. The prosecutor must show by a preponderance of the evidence that the defendant knowingly, intelligently, and voluntarily waived his Fifth Amendment right." *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005) (citations and quotation marks omitted). We review the question of voluntariness de novo considering the totality of the circumstances. *Id*.

> In determining voluntariness, the court should consider all the circumstances, including: "[1] the age of the accused; [2] his lack of education or his intelligence level; [3] the extent of his previous experience with the police; [4] the repeated and prolonged nature of the questioning; [5] the length of the detention of the accused before he gave the statement in question; [6] the lack of any advice to the accused of his constitutional rights; [7] whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; [8] whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; [9] whether the accused was deprived of food, sleep, or medical attention; [10] whether the accused was physically abused; and [11] whether the suspect was threatened with abuse." No single factor is determinative. "The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made." [*Id*. at 708 (citations omitted).]

The record shows that defendant was approximately 47 years of age, did not demonstrate a lack of intelligence, had previous experience with the police, was not ill or intoxicated, and was not deprived of food, sleep, or medical attention. Although the interrogation lasted several hours and defendant did not make the statements in question until near the end, defendant was not abused or threatened with abuse and he was informed of his constitutional rights. There is no evidence of the psychological abuse alleged by defendant. O'Riordan testified that he did not

coerce defendant. Under the totality of the circumstances, the trial court did not err by determining that defendant's statements were voluntarily made.

## 2. KNOWING WAIVER

> Similarly, this Court reviews de novo the entire record to determine whether an accused has knowingly and intelligently waived his Fifth Amendment rights. However, deference is given to the trial court's assessment of the weight of the evidence and the credibility of the witnesses, and the trial court's findings will not be reversed unless they are clearly erroneous and leave "this Court with a definite and firm conviction that a mistake was made." [*Id*. at 707-708 (citations omitted).]

With regard to statements made during a post-polygraph interview, the Michigan Supreme Court held that "the admissibility of such statements is to be resolved by a review as to whether in the 'totality of circumstances' the waiver of the Fifth Amendment right could be considered knowing and voluntary." *People v Ray*, 431 Mich 260, 276; 430 NW2d 626 (1988). In *Ray*, the defendant signed a waiver that expressly extended to the post-polygraph interview. *Id*. at 277.

Although defendant was not specifically informed that anything he might say after the polygraph examination could be used against him and defendant did not sign a waiver expressly extending to the post-examination interview, the totality of the circumstances establish that defendant's waiver was knowing and voluntary and extended to the post-polygraph examination. At the start, O'Riordan informed defendant of his *Miranda* rights, including that anything he said could be used against him in a court or other proceeding, and defendant initialed a form stating that he voluntarily waived those rights and agreed to answer questions. O'Riordan testified that he went through each step of the process—pre-polygraph interview, polygraph examination, and post-polygraph interview—with defendant before proceeding. Although O'Riordan did not again advise defendant of his rights after the polygraph examination, defendant never indicated that he wished to stop the interview. And, while defendant testified that he requested his attorney, O'Riordan testified that defendant waived the presence of counsel. The trial court apparently found O'Riordan's testimony to be more credible than that of defendant, and we defer to the trial court's credibility determinations. *Tierney*, 266 Mich App at 708. Under these circumstances, the trial court did not err in determining that defendant's waiver was knowing and voluntary.

Defendant cites *People v Leonard*, 421 Mich 207; 364 NW2d 625 (1984) in support of his argument that his post polygraph interview statements are inadmissible. However, that case is distinguishable because, unlike the facts here, in that case the defendant's post-polygraph interrogation statements were properly suppressed only because "the defendant did not knowingly waive his right to remain silent in view of the stipulation executed by the prosecution and the defense whereby the results of the polygraph examination and opinions drawn therefrom would not be admissible in evidence." *Id*. at 210.

## 3. FAILURE TO RECORD INTERVIEW

Defendant also contends that his statement should have been suppressed because the interview was not recorded as required by MCL 763.8. We review de novo the interpretation of statutes. *People v Juntikka*, 310 Mich App 306, 309; 871 NW2d 555 (2015).

MCL 763.9 provides:

Any failure to record a statement as required under [MCL 763.8] or to preserve a recorded statement does not prevent any law enforcement official present during the taking of the statement from testifying in court as to the circumstances and content of the individual's statement if the court determines that the statement is otherwise admissible. However, unless the individual objected to having the interrogation recorded and that objection was properly documented under section 8(3), the jury shall be instructed that it is the law of this state to record statements of an individual in custodial detention who is under interrogation for a major felony and that the jury may consider the absence of a recording in evaluating the evidence relating to the individual's statement.

There is no dispute that the interrogation of defendant was not recorded as required by law. Nonetheless, suppression of defendant's statement was not required under MCL 763.9. Rather, the trial court properly instructed the jury that it may consider the absence of a recording in evaluating the evidence relating to defendant's statement.[5]

We also reject defendant's claim that O'Riordan's testimony regarding defendant's statements was inadmissible because it was not defendant's exact statement. Defendant cites *People v McGillen*, 392 Mich 251, 263; 220 NW2d 677 (1974), in which the Court stated: "It is only the Defendant's statements that may be admissible against him, not the arresting officer's editorialized version of them." However, in *People v Eccles*, 141 Mich App 523, 524-525; 367 NW2d 355 (1984), this Court held that *McGillen* did not stand for the proposition "that confessions should be held inadmissible if they are not substantiated by a contemporaneous record." This Court explained:

The defendant's statements in that case were ruled inadmissible because the prosecution failed to establish that the defendant had knowingly and intelligently waived his *Miranda* rights, not because the arresting officer had given an editorialized version of them. That the officer deliberately testified to an edited version of defendant's statements went only to the question of the officer's credibility. [*Id.* at 525 (citation omitted).]

Moreover, as in *Eccles*, there is no support in the record for defendant's assertion that O'Riordan's testimony regarding defendant's statement was paraphrased or editorialized. See *id.*

---

[5] The specific language used by the trial court to instruct the jury is discussed below.

## 4. LIMITATION ON CROSS-EXAMINATION AND FAILURE TO INSTRUCT JURY

Finally, we reject defendant's claim that the trial court compounded the alleged error by limiting defense counsel's cross-examination of O'Riordan regarding the circumstances and context of the examination, which would have "revealed O'Riordan's history and background as an experienced manipulator used by police departments to turn the ploy of a 'polygraph examination' into as [sic] a method of obtaining purported admissions." We review a trial court's limitation of cross-examination for an abuse of discretion. *People v Sexton*, 250 Mich App 211, 221; 646 NW2d 875 (2002).

The trial court did not abuse its discretion in limiting defense counsel's cross-examination of O'Riordan on this issue because evidence relating to a polygraph examination is inadmissible. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). Moreover, evidence of O'Riordan's alleged use of manipulation during polygraph examinations in other cases would have been irrelevant to the question of whether defendant's statement was voluntarily given in this case. As we have already concluded, defendant's statement was voluntary.

Defendant also contends that the trial court erred in denying his request to instruct the jury that where law enforcement fails to make reasonable efforts to preserve evidence, the jury may infer that the evidence would have been adverse to the prosecution. "Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Henderson*, 306 Mich App 1, 3; 854 NW2d 234 (2014) (citation and quotation marks omitted). The trial court properly instructed the jury under MCL 763.9 concerning O'Riordan's failure to record defendant's post-polygraph interview. Particularly when considered in that context, the trial court's refusal to give the instruction requested by defendant was not an abuse of discretion.

## B. MOTION FOR MISTRIAL

Defendant next argues that the trial court abused its discretion by denying his motion for a mistrial and admitting the victim's testimony regarding his alleged sexual assaults on his daughters because (1) the evidence was not relevant, (2) the evidence was introduced for an improper propensity purpose under MRE 404(b)(1), (3) the prosecutor failed to provide the proper notice under MRE 404(b)(2) or establish good cause for failing to provide notice, and (4) any relevance of the evidence was outweighed by the unfair prejudice [Defendant's Brief on Appeal, pp 22-28]. We disagree.

We review a trial court's decision to deny a motion for a mistrial for an abuse of discretion. *People v Waclawski*, 286 Mich App 634, 708; 780 NW2d 321 (2009). "An abuse of discretion occurs when a court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v White*, 307 Mich App 425, 429; 862 NW2d 1 (2014).

"A mistrial is warranted only when an error or irregularity in the proceedings prejudices the defendant and impairs his ability to get a fair trial." *Waclawski*, 286 Mich App at 708 (citation and quotation marks omitted). "A trial court should only grant a mistrial when the prejudicial effect of the error cannot be removed in any other way." *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008). "[I]nstructions are presumed to cure most errors." *Id.*

Generally, "unresponsive testimony by a prosecution witness does not justify a mistrial unless the prosecutor knew in advance that the witness would give the unresponsive testimony or the prosecutor conspired with or encouraged the witness to give that testimony." *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990).

The following exchange occurred between the prosecutor and the victim at trial:

> *Q*. And what was he doing or saying at that point in time?
>
> *A*. At that point in time like at that point in time I was asking him about like if he had ever done what he did to me to me like his older daughters, and I told him not do it to my younger sisters.
>
> *Q*. And what else did he do?
>
> *A*. He told me that he wouldn't do that to my little sister, but I asked him if he ever did that to my older stepsister and he told me yes, and he say they loved him for doing that to them.

MRE 404(b) provides:

(b) Other crimes, wrongs, or acts.

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

(2) The prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination.

Contrary to the trial court's finding, the victim's testimony was clearly "other acts" evidence under MRE 404(b). The Michigan Supreme Court recently explained that "by its plain terms, MRE 404(b) only applies to evidence of crimes, wrongs, or acts 'other' than the 'conduct at issue in the case' that risks an impermissible character-to-conduct inference. Correspondingly, acts comprised by or directly evidencing the 'conduct at issue' are not subject to scrutiny under MRE 404(b)." *People v Jackson*, 498 Mich 246, 262; 869 NW2d 253 (2015). The conduct at issue in this case was defendant's charged acts of CSC against the victim and his prior conduct with his other daughters did not constitute, directly evidence, or contemporaneously facilitate the commission of this conduct. See *id*. at 263. This prior conduct could give rise to an

-12-

impermissible character-to-conduct inference. Moreover, the age of defendant's daughters at the time of the alleged other acts did not impact whether the victim's testimony was subject to MRE 404(b), which does not limit the type of other criminal conduct. See *id.* at 264-265.

The prosecution argues that this evidence was admissible in order for the jury to hear "a complete story." However, the Court in *Jackson* rejected the res gestae exception, sometimes characterized as other acts that are necessary to "complete the story," to MRE 404(b). *Jackson*, 498 Mich at 265-276. The prosecution fails to offer, and we fail to see, any proper, non-propensity purpose for the admission of the victim's testimony. The prosecution argues that defendant's statements heightened the victim's fear and anxiety, but the victim's fear and anxiety was not a material fact in the case.

Moreover, the trial court erroneously found that the testimony was admissible because defendant never filed a motion in limine to exclude the evidence. MRE 404(b)(2) plainly requires the prosecutor to provide reasonable notice in advance of trial to the defendant. It does not place the burden on defendant to file a motion in limine, even if he is aware of the evidence before trial.

Having found error, we must determine whether the prejudicial effect of the error denied defendant a fair trial. See *Waclawski*, 286 Mich App at 708. In this case, the victim's testimony was unresponsive and the prosecution was at least aware that the victim could give such testimony based on her similar testimony at the preliminary examination, but there was no evidence that the prosecution knew that the witness would provide such testimony or that she encouraged her to give such testimony. See *Hackney*, 183 Mich App at 531. Moreover, the erroneous introduction of other acts evidence may be harmless where it does not "undermine[] the reliability of the verdict." *Jackson*, 498 Mich at 280 (citation and quotation marks omitted). In this case, the evidence of the defendant's guilt was overwhelming. In addition to the victim's testimony, which was alone sufficient to support the jury's verdict, see MCL 750.520h, there was physical evidence at the scene of crime that corroborated the victim's testimony, including the lighter that resembled a gun, pills, and the pill in the victim's makeup compact. Defendant's DNA was also found on the carpet, along with the victim's DNA, and on the gray shirt, which the victim testified that defendant used to wipe himself and the floor. Defendant also admitted that he woke up to the victim putting his penis in her mouth. Given the evidence against him, defendant was not denied a fair trial by the admission of the victim's testimony regarding his other acts. Defendant was also offered the option of an instruction regarding the testimony about other acts, but he did not take advantage of this offer. See *Horn*, 279 Mich App at 36; see also *People v Stewart*, 199 Mich App 199, 200; 500 NW2d 756 (1993). Accordingly, a mistrial was unwarranted and the trial court did not abuse its discretion in denying defendant's motion.

## C. ADDITIONAL TESTING OF EVIDENCE

Next, defendant argues that the trial court denied him the right to present a defense by refusing to allow additional DNA testing of the sperm on the dental floss and the sperm allegedly found at the scene of the crime. We disagree.

"Preserved evidentiary rulings are reviewed for an abuse of discretion. However, we review de novo the question whether a defendant was denied the constitutional right to present a defense." *People v Unger*, 278 Mich App 210, 247; 749 NW2d 272 (2008) (citations omitted).[6]

With regard to the sperm found on the dental floss, Morgan testified that there was such a small amount of male DNA that she was unable to provide a DNA type for the male donor. Contrary to defendant's argument, Morgan testified that all males would be excluded as the donor, but that did not mean that defendant's DNA was not on the dental floss. Morgan further testified that with the sample she received, there was no additional testing that could be done to determine the male donor because of the minimal amount of male DNA. In response to defense counsel's question whether Morgan asked Corsi for the remainder of the dental floss, Morgan testified:

> Well, actually the sample that she sent me was a combination of the extract that she used to make the sperm smear. So, it was the cutting that she usually used to make the slide to look for sperm, she absorbed that extract onto a swab, sent that along with additional extra cuttings of the dental floss.
>
> So based on that amount of the same that I received, it was a pretty significant quantity.

Morgan further explained that "based on the rough estimate of seeing only two sperm, it would lead me to believe that the dental floss did not contain an enormous amount of sperm cells to obtain a profile." Based on this testimony, the trial court did not abuse its discretion by denying additional testing, and defendant was not denied the right to present a defense.

With regard to the other evidence at the scene, Morgan testified that the DNA profile from the sperm on the gray shirt and the tan carpet matched defendant's DNA type. On appeal, defendant contends that all scientific evidence must meet the three-prong standard of *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993). However, defendant waived a *Daubert* hearing before trial, and his counsel expressly stated that he was "not questioning the reliability" of such evidence. Defendant fails to offer any reason why additional testing and comparison was required. Accordingly, by denying defendant's request for additional testing the trial court neither abused its discretion nor denied defendant the right to present a defense.

### D. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also contends that his previous attorney, Sheikh, was ineffective in (1) failing to advise him not to attend the polygraph examination or make statements without counsel, (2) failing to inform him that the process would consist of three parts of interrogation, (3) failing to request that the polygraph examination be recorded, (4) failing to review the proposed questions to be asked, (5) failing to attend the polygraph examination/interview, (6) failing to obtain a

---

[6] We note that defendant did not actually file a motion for additional testing until after trial.

-14-

comprehensive testing of all defendant's STDs, and (7) failing to ensure the preservation of all DNA/sperm evidence. We disagree.

When an evidentiary hearing is not held, this Court's review of a defendant's claims of ineffective assistance of counsel is limited to any mistakes apparent on the record. *People v Scott*, 275 Mich App 521, 526; 739 NW2d 702 (2014). In this case, the trial court did not hold a *Ginther* hearing, but Sheikh and defendant both provided relevant testimony at the *Walker* hearing.

> To prove that defendant received ineffective assistance of counsel, he must show (1) "that counsel's performance was deficient in that it fell below an objective standard of professional reasonableness" and (2) that there is a reasonable probability that the outcome of the trial would have been different but for counsel's performance. There is a presumption of effective assistance of counsel, and the burden is on defendant to prove otherwise. An appellate court should neither "substitute [its] judgment for that of counsel on matters of trial strategy, nor . . . use the benefit of hindsight when assessing counsel's competence." [*People v Roscoe*, 303 Mich App 633, 643-644; 846 NW2d 402 (2014) (citations omitted).]

### 1. CLAIMS RELATED TO POLYGRAPH EXAMINATION

With regard to defendant's claims that Sheikh failed to advise him not to attend the polygraph examination, failed to advise him not to make statements, and failed to attend the polygraph examination, defendant and Sheikh gave conflicting testimony. Defendant testified that Sheikh never discussed the polygraph examination with him and said that he would be at the examination. He also testified that he asked for his attorney during the examination. Sheikh, however, testified that he discussed defendant's rights with him before the polygraph examination, he advised defendant not to make a statement, defendant knew Sheikh would not be present, and defendant insisted on taking the polygraph examination. O'Riordan testified that defendant waived his right to an attorney. Even if Sheikh's performance fell below an objective standard of reasonableness, defendant fails to establish prejudice because he knowingly and voluntarily waived his rights and submitted to the polygraph examination.

With regard to defendant's claim that Sheikh failed to tell him that the interview would be three parts, failed to review the questions to be asked, and failed to request that the interrogation be recorded, defendant also fails to establish prejudice. The record established that O'Riordan explained the process to defendant, reviewed the questions to be asked, and told defendant he could ask to stop at any time. O'Riordan also testified that defendant agreed to the interview not being recorded. And, even if Sheikh had requested that the interrogation be recorded, there is no evidence that the police would have done so.

### 2. CLAIM RELATED TO TESTING FOR STDs

Defendant also contends that Sheikh was ineffective by failing to obtain a comprehensive test on defendant for all STDs in order to show that defendant did not transmit any disease to the victim and, thus, making it unlikely that the alleged assault ever occurred. Defendant again fails

to establish prejudice because his subsequent attorney filed a motion for testing for all STDs, which the trial court denied.[7] "It is well established that defense counsel is not ineffective for failing to pursue a futile motion." *People v Brown*, 279 Mich App 116, 142; 755 NW2d 664 (2008).

### 3. CLAIMS RELATED TO PRESERVING EVIDENCE

Lastly, defendant argues that Sheikh was ineffective by failing to request preservation of all DNA and sperm evidence. Defendant, however, fails to explain what action he believes Sheikh should have taken to ensure preservation of the DNA and sperm evidence. Also, the record reveals that defendant's subsequent attorney filed a motion to preserve evidence, and there is no record evidence indicating spoliation of evidence in the interim, so Sheikh's failure to do so was harmless. Finally, defendant fails to argue that any specific evidence was not preserved or how he was prejudiced.

### E. JURY INSTRUCTIONS

Defendant next contends that the trial court erroneously instructed the jury that (1) the testimony of the victim did not need to be corroborated, and (2) law enforcement should, rather than shall, record an interrogation; he claims that these two instructions unfairly bolstered the credibility of the prosecution's witnesses. We disagree.

"Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *Henderson*, 306 Mich App at 3 (citation and quotation marks omitted).

> A defendant has the right to have a properly instructed jury consider the evidence against him or her, and it is the trial court's role "to clearly present the case to the jury and to instruct it on the applicable law." "The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." When examining instructions to determine if an error has occurred, the instructions must be considered "as a whole, rather than piecemeal. . . ." Even if imperfect, a jury instruction is not grounds for setting aside a conviction "if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." [*Id.* at 4 (citations omitted).]

MCL 750.520h provides that "[t]he testimony of a victim need not be corroborated in prosecutions under [MCL 750.520b]." Accordingly, the trial court properly instructed the jury that "[t]o prove these charges it is not necessary that there be evidence other than the testimony of [the victim], if that testimony proves guilt[] beyond a reasonable doubt." Thus, there was no error.

With regard to the failure to record the interrogation, the trial court instructed the jury:

---

[7] The propriety of the trial court's ruling is discussed further below.

It is the law of this state that when [defendant] was interrogated and given his Miranda rights the law enforcement official interrogating him should have made a time stamped audio/visual recording of the entire interrogation. You the jury may consider the absence of a record in evaluating the evidence relating to [defendant's] statement.

When considered as a whole, this instruction fairly stated the applicable law. The instruction apprised the jury that the law required the interrogation to be recorded. The trial court's use of "should have" was not improper because "should" is the past tense of "shall." See *Merriam-Webster's Collegiate Dictionary* (2014). The instruction also made clear that the jury could consider the absence of a recording. Accordingly, there was no error.

## F. MOTION TO SUPPRESS

Defendant contends that the trial court erred by denying the motion to suppress the evidence seized from his home because the search was conducted without a warrant or exigent circumstances, and the search warrant was subsequently obtained through a fraudulent affidavit. We disagree.

"We review de novo a trial court's ultimate decision on a motion to suppress. However, the trial court's underlying findings of fact are reviewed for clear error." *People v Beuschlein*, 245 Mich App 744, 748; 630 NW2d 921 (2001) (citations omitted).

> Both the United States and Michigan Constitutions guarantee the right against unreasonable searches and seizures. The lawfulness of a search or seizure depends on its reasonableness. As a general rule, searches conducted without a warrant are per se unreasonable under the Fourth Amendment unless the police conduct falls under one of the established exceptions to the warrant requirement. [*Id*. at 749 (citations omitted).]

One exception to the warrant requirement is the "exigent circumstances" exception, under which "the police may enter a dwelling without a warrant if the officers possess probable cause to believe that a crime was recently committed on the premises, and probable cause to believe that the premises contain evidence or perpetrators of the suspected crime." *Beuschlein*, 245 Mich App at 749 (citation and quotation marks omitted). Under this exception, the police must also "establish the existence of an actual emergency on the basis of specific and objective facts indicating that immediate action is necessary to (1) prevent the imminent destruction of evidence, (2) protect the police officers or others, or (3) prevent the escape of a suspect." *Id*. at 749-750 (citation and quotation marks omitted). The Michigan Supreme Court has stated:

> In the context of a removal or destruction of evidence case, the most objective and compelling justification would be an actual observation of removal or destruction of evidence or such an attempt. Absent such compelling facts, the police must present facts indicating more than a mere possibility that there is a risk of the immediate destruction or removal of evidence. [*People v Blasius*, 435 Mich 573, 594; 459 NW2d 906 (1990).]

After holding an evidentiary hearing, the trial court ruled that there was a basis for the initial entry into the home and it did not suppress the evidence discovered in the home. The testimony at the evidentiary hearing revealed that when Officer Mosher arrived at the victim's neighbor's house, the neighbor stated that the victim was afraid to go home because her father abused her and the victim appeared to be afraid and distraught. The victim stated that her stepfather sexually assaulted her and she had cuts on the inside of her lip. The victim then took the officers to her home where the assault occurred and the victim stayed outside while the officers entered the home in order to determine whether the suspect was there and to preserve any evidence at the scene. A search warrant was obtained later that day and the evidence technicians were called to process the scene.

Even if the officers' initial entry into the home was invalid, suppression of the evidence discovered in the home was not required. In general, unconstitutionally seized evidence must be excluded from trial, but the inevitable discovery doctrine "permits the admission of evidence obtained in violation of the Fourth Amendment if it can be shown by a preponderance of the evidence that the items found would have ultimately been obtained in a constitutionally accepted manner." *People v Hyde*, 285 Mich App 428, 439-440; 775 NW2d 833 (2009).

In this case, after their initial entry, the police obtained a search warrant for defendant's home before returning to collect evidence. Although defendant argues on appeal that the warrant was unlawful because the affidavit omitted the fact that the officers had already entered the home, defendant did not raise this issue below. Therefore, our review is for plain error affecting defendant's substantial rights. See *People v Putman*, 309 Mich App 240, 245-246; 870 NW2d 593 (2015).

> The defendant has the burden of showing, by a preponderance of the evidence, that the affiant knowingly and intentionally, or with a reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to the finding of probable cause. This standard also applies to material omissions from affidavits. The invalid portions of an affidavit may be severed, and the validity of the resultant warrant may be tested by the information remaining in the affidavit. [*People v Ulman*, 244 Mich App 500, 510; 625 NW2d 429 (2001) (citations omitted).]

As the search warrant and affidavit are not part of this record, defendant cannot support his contention that the affidavit omitted the fact of the prior entry into defendant's home, defendant also otherwise fails to dispute that there was probable cause to obtain the search warrant for his home. Thus, regardless of the prior entry, the police had probable cause to obtain a search warrant based on the victim's statements, "… and the search warrant provided both an independent basis for the second entry and an independent source for the discovery and seizure of the evidence." *People v Snider*, 239 Mich App 393, 411-412; 608 NW2d 502 (2000).

## G. SPEEDY TRIAL

Defendant contends that the trial court erred in failing to dismiss the case for violation of his right to a speedy trial. We disagree.

"The determination whether a defendant was denied a speedy trial is a mixed question of fact and law. The factual findings are reviewed for clear error, while the constitutional issue is a question of law subject to review de novo. In addition, this Court must determine whether any error was harmless beyond a reasonable doubt." *Waclawski*, 286 Mich App at 664 (citations omitted).

> Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial. We enforce this right both by statute and by court rule. The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest. In contrast to the 180–day rule, a defendant's right to a speedy trial is not violated after a fixed number of days. . . . In determining whether a defendant has been denied the right to a speedy trial, we balance the following four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury. . . . [A] "presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." [*People v Williams*, 475 Mich 245, 261-262; 716 NW2d 208 (2006) (citations omitted).]

The first factor to be considered is the length of the delay. In this case, defendant was arrested in May 2013 and his trial was held in September 2014. Because the delay in this case was less than 18 months, defendant must show prejudice. *Waclawski*, 286 Mich App at 665. "There are two types of prejudice: prejudice to the person and prejudice to the defense." *People v Gilmore*, 222 Mich App 442, 461-462; 564 NW2d 158 (1997). Defendant alleges both types of prejudice, arguing that he was prejudiced by (1) the loss of witnesses who would have testified that he did not commit the offenses, (2) his natural loss of recollection of events, and (3) anxiety, depression, stress, and mental anguish that he suffered during his confinement. Defendant, however, fails to identify any particular witnesses who would have testified that he did not commit the offenses. Moreover, "general allegations of prejudice," such as loss of recollection, are insufficient to establish the denial of the right to a speedy trial. *Gilmore*, 222 Mich App at 462. Similarly, "anxiety, alone, is insufficient to establish a violation of defendant's right to a speedy trial." *Id*.

Defendant also cites MCR 6.004(C) and caselaw applying the 180-day rule. Defendant did not raise this issue below; therefore, we review for plain error affecting his substantial rights. See *Putman*, 309 Mich App at 245-246. MCR 6.004(C) provides in relevant part:

> In a felony case in which the defendant has been incarcerated for a period of 180 days or more to answer for the same crime or a crime based on the same conduct or arising from the same criminal episode, . . . the defendant must be released on personal recognizance, unless the court finds by clear and convincing evidence that the defendant is likely either to fail to appear for future proceedings or to present a danger to any other person or the community.

With regard to defendant's request for pretrial release under MCR 6.106, the prosecution argued that a similar test applied, and the trial court found that there was sufficient proof that bond was appropriate. Thus, defendant fails to establish plain error affecting his substantial rights. Moreover, defendant is not entitled to relief under the 180-day rule under MCL 780.131 or MCR 6.004(D) because he was detained before trial in the county jail, not a state penal institution. *People v McLaughlin*, 258 Mich App 635, 643-644, 644 n 2; 672 NW2d 860 (2003).

## H.  SENTENCING

Finally, defendant contends that (1) the trial court improperly scored OVs 1, 3, 11, and 12, resulting in an incorrect guidelines range, (2) the scoring procedures under OVs 11 and 12 violate due process, and (3) the trial court determined defendant's minimum sentence based on facts not proved beyond a reasonable doubt. Although the OVs were properly scored and defendant fails to establish a due process violation, we remand for proceedings consistent with this opinion.

### 1.  SCORING OF OVs

> [T]he circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citations omitted).]

First, defendant contends that the trial court erred in scoring OV 1 at five points because no pistol was involved, and the victim was not certain that defendant took the object that resembled a gun to the basement where the alleged assault occurred, five points are assigned if "[a] weapon was displayed or implied." MCL 777.31(1)(e). MCL 77.31(2)(c) instructs the court to "[s]core 5 points if an offender used an object to suggest the presence of a weapon." The victim testified that defendant entered her room carrying what appeared to be a gun, held the object that resembled a gun to the victim's head, and told her to shut up. Defendant then took the victim to the basement, where the assault occurred. Although the object was actually a lighter, defendant implied that it was a weapon when he held it to the victim's head. Moreover, even if defendant did not bring the object with him to the basement, he obtained the victim's compliance in going to the basement through the implication of the weapon. Therefore, the trial court did not err in assigning five points for OV 1.

Next, defendant contends that the trial court improperly assessed five points for OV 3 because the SANE nurse testified that the victim had no visible injuries and tenderness is not a bodily injury. Under OV 3, five points are assessed if "[b]odily injury not requiring medical treatment occurred to a victim." MCL 777.33(1)(e). Although Vandam testified that the victim did not have any injuries to her lips, the victim testified that she had cuts on her lip and Officer Mosher observed cuts on the inside of the victim's lip. Therefore, the trial court did not err in assigning five points for OV 3.

Next, defendant contends that that trial court erred in assessing 50 points for OV 11 because none of the three penetrations that were the basis for his three convictions of first-degree CSC could be used to score OV 11. Under OV 11, 50 points are assigned if "[t]wo or more criminal sexual penetrations occurred." MCL 777.41(1)(a). MCL 777.41(2) provides:

All of the following apply to scoring offense variable 11:

(a) Score all sexual penetrations of the victim by the offender arising out of the sentencing offense.

(b) Multiple sexual penetrations of the victim by the offender extending beyond the sentencing offense may be scored in offense variables 12 or 13.

(c) Do not score points for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense.

Contrary to defendant's argument, this Court has interpreted OV 11 as only prohibiting the assignment of points for the one penetration that forms the basis of the sentencing offense:

We agree . . . that the proper interpretation of OV 11 requires the trial court to exclude the one penetration forming the basis of the offense when the sentencing offense itself is first-degree or third-degree CSC. Under this interpretation, trial courts may assign points under subsection 41(2)(a) for "all sexual penetrations of the victim by the offender arising out of the sentencing offense," while complying with the mandate of subsection 41(2)(c), by not scoring points for *the one penetration* that forms the basis of a first-or third-degree CSC offense. Accordingly, trial courts are prohibited from assigning points for the one penetration that forms the basis of a first-or third-degree CSC offense that constitutes the sentencing offense, but are directed to score points for penetrations that did not form the basis of the sentencing offense.

In reaching this conclusion, it is important to note that under defendant's interpretation, the trial court would be prohibited from assigning points for the one penetration that forms the basis of *any* first-or third- degree CSC conviction. Thus, in a case such as this, involving multiple penetrations that were each separately charged, the trial court would be required to assign an offender zero points under OV 11 because each single penetration would be the basis of a first degree CSC charge. Defendant's interpretation would also encourage departures from the statutory sentencing guidelines because no other variable accounts for multiple convictions involving criminal sexual penetrations that do not give rise to a continuing pattern of criminal behavior. Finally, had the Legislature intended that only sexual penetrations not resulting in a criminal charge be considered, it could have stated that intent. In the absence of such limiting language in MCL 777.42 [sic], we will not read a similar limitation into that section. [*McLaughlin*, 258 Mich App at 676-677 (citations omitted).]

Therefore, the trial court properly assigned points for the two other penetrations that did not form the basis of the sentencing offense.

Lastly, defendant contends that the trial court improperly assessed five points under OV 12 because there was no evidence of a contemporaneous felonious act. Under OV 12, five points are assigned if "[o]ne contemporaneous felonious criminal act involving a crime against a person was committed." MCL 777.42(1)(d). MCL 777.42(2) provides:

All of the following apply to scoring offense variable 12:

(a) A felonious criminal act is contemporaneous if both of the following circumstances exist:

(*i*) The act occurred within 24 hours of the sentencing offense.

(*ii*) The act has not and will not result in a separate conviction.

(b) A violation of [MCL 750.227b], should not be considered for scoring this variable.

(c) Do not score conduct scored in offense variable 11.

At sentencing, the prosecution argued that OV 12 should be scored at five points because defendant's act of fondling the victim's breasts, which would constitute second-degree CSC, occurred within 24 hours, and did not result in a separate conviction. The victim testified that during the assault occurring in the basement, defendant told the victim to lie down and he licked the victim's vagina and touched her breasts. The defendant's act of touching the victim's breasts constituted second-degree CSC, see MCL 750.520c., a felonious crime against a person, MCL 777.16y, occurring within 24 hours of the sentencing offense that neither has nor will result in a separate conviction. Finally, it was not scored under OV 11. Accordingly, the trial court did not err in scoring five points for OV 12.

## 2. DUE PROCESS

With regard to OVs 11 and 12, defendant also contends that the sentencing guidelines violate due process by allowing the prosecution to decline to charge additional counts of CSC and thereby obtain additional points under OVs 11 and 12. We review this unpreserved issue for plain error affecting defendant's substantial rights. See *Putman*, 309 Mich App at 245-246.

With regard to OV 11, defendant's claim lacks merit because OV 11 was scored on the basis of the other two *charged* CSC offenses. With regard to OV 12, defendant is correct that if the prosecution had charged defendant with CSC for the act of touching the victim's breasts and defendant had been convicted, the prosecution could not have then used that conduct to obtain five points under OV 12. MCL 777.42(2)(a)(*ii*). Defendant argues that by giving the prosecution the option of either charging the conduct or obtaining points under OV 12, the guidelines permit prosecutorial vindictiveness. "It is a violation of due process to punish a person for asserting a protected statutory or constitutional right." *People v Ryan*, 451 Mich 30, 35; 545 NW2d 612 (1996). "Such punishment is referred to as prosecutorial vindictiveness." *Id*. at 36. Defendant, however, does not allege, and there is no evidence, that the prosecutor decided not to charge defendant's act of touching the victim's breasts, and to instead obtain points under OV 12, as punishment for defendant's assertion of a statutory or constitutional right. Thus,

-22-

defendant fails to establish a violation of due process or plain error affecting his substantial rights.

### 3. JUDICIAL FACT-FINDING

Defendant also contends that the trial court scored OVs 1, 3, 11, and 12 based on facts that were not proven to the jury beyond a reasonable doubt. Defendant did not raise this issue below; therefore, it is unpreserved and we review for plain error affecting substantial rights. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). In order to establish plain error, defendant must show that that the trial court calculated his guidelines minimum sentence range on the basis of facts not admitted by defendant or found by the jury, and the sentence was not an upward departure. *Id*. at 394-395.

Defendant received a total of 85 OV points and had 105 points assessed for the PRVs, placing him on the F-V cell of the sentencing grid for Class A offenses. MCL 777.62. With defendant's fourth habitual offender enhancement, his minimum guidelines range was 225 to 750 months to life. We disagree with defendant that the facts necessary to score OV 11 were not established by the jury's verdict. Defendant's convictions by the jury of the other first-degree CSC offenses necessarily established the factual basis for assessing 50 points for OV 11. We agree, however, that the facts necessary to score OV 1 at five points, OV 3 at five points, and OV 12 at five points were not admitted by defendant or established by the jury's verdict. The jury did not necessarily find, nor did defendant admit, that a weapon was implied or displayed, the victim suffered bodily injury, or defendant touched the victim's breasts, as these were not elements of any of the offenses for which defendant was convicted. Absent the 15 points for these variables, which were scored on the basis of judicial fact-finding, defendant's OV score would have been 70, within OV level IV. See MCL 777.62. Because the scoring of these variables affected the minimum sentence guidelines range, and the trial court sentenced defendant within the recommended guidelines range, defendant has made a threshold showing of potential plain error sufficient to warrant a remand to the trial court for further inquiry. *Lockridge*, 498 Mich at 395. Accordingly, we remand to the trial court to follow the *Crosby*[8] procedure outlined in *Lockridge*. See *Lockridge*, 498 Mich at 398.

### III. ISSUES RAISED IN DEFENDANT'S STANDARD 4 BRIEF

### A. TESTING FOR SEXUALLY TRANSMITTED DISEASES

In his brief filed pursuant to Administrative Order 2004-6, Standard 4, defendant first contends that he was denied the right to present a defense based on the trial court's refusal to allow him to undergo testing for STDs and obtain an expert report stating that it is likely that, if the assault had actually occurred, an STD would have been transmitted to the victim. We disagree.

---

[8] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

"Preserved evidentiary rulings are reviewed for an abuse of discretion. However, we review de novo the question whether a defendant was denied the constitutional right to present a defense." *Unger*, 278 Mich App at 247.

Based on our review of the record, the trial court did not deny defendant the ability to undergo additional testing or obtain an expert. Rather, the trial court told defense counsel to find an expert to perform the testing he was seeking, and the trial court stated that it would assist with the cost. On September 3, 2014, defense counsel informed the trial court that he was unable to locate a proper expert and requested an adjournment, but the trial court denied the request. However, there is no evidence that defendant would have been able to obtain an expert to perform "the appropriate testing" even if he had been given additional time. Thus, the trial court did not abuse its discretion, and defendant was not denied the right to present a defense.

Moreover, any error was harmless beyond a reasonable doubt. See *People v Dendel (On Second Remand)*, 289 Mich App 445, 475; 797 NW2d 645 (2010). Again, defendant only speculates that he could have found an expert to testify that he had an STD and that it is likely that the victim would have contracted the STD if the assault had actually occurred. With regard to HPV in particular, one of defendant's previous attorneys admitted on the record that a medical director at the Macomb County Health Department informed him that HPV would not necessarily have transferred to the victim and could also take years to manifest. Thus, it cannot be concluded that the testing sought by defendant would have produced exculpatory evidence that would have changed the result of the trial.

## B. PRELIMINARY EXAMINATION AND AMENDMENT OF COMPLAINT

Defendant also contends that he was denied his statutory and due process rights to a timely preliminary examination, and the magistrate improperly enhanced the seriousness and number of the charges at the preliminary examination. We disagree.

We review this unpreserved issue for plain error affecting substantial rights. See *Putman*, 309 Mich App at 245-246. MCR 6.110(B)(1) provides:

> Unless adjourned by the court, the preliminary examination must be held on the date specified by the court at the arraignment on the warrant or complaint. If the parties consent, the court may adjourn the preliminary examination for a reasonable time. If a party objects, the court may not adjourn a preliminary examination unless it makes a finding on the record of good cause shown for the adjournment. A violation of this subrule is deemed to be harmless error unless the defendant demonstrates actual prejudice.

As discussed above, defendant's preliminary examination was initially adjourned on May 29, 2013, and was not actually held until January 29, 2014. While defendant contends that the eight-month delay was intended to accommodate the prosecution's efforts to secure the testimony of the victim and enhance the seriousness and number of charge against him, the record reveals that only the first delay was due to the victim's failure to appear. It is unclear from the record why the victim was not present, but this Court has held that the unavailability of essential witnesses, who were on vacation at the time of the scheduled preliminary examinations,

constituted good cause. *People v Horne*, 147 Mich App 375, 377-378; 383 NW2d 208 (1985). Defendant either sought or agreed to each of the other delays. Thus, defendant fails to establish plain error. Moreover, the magistrate did not err in granting the prosecution's motion to amend the charges after the victim's testimony. Finally, other than the alleged prejudice from the victim's presence and testimony, defendant fails to allege or establish any actual prejudice resulting from a violation of this rule.

## C. SUFFICIENCY OF THE EVIDENCE

Defendant next contends that there was insufficient evidence to support his convictions. We disagree.

> Due process requires that, to sustain a conviction, the evidence must show guilt beyond a reasonable doubt. In determining the sufficiency of the evidence, this Court reviews the evidence in the light most favorable to the prosecution. We do not consider whether any evidence existed that could support a conviction, but rather, we must determine whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt. "[C]ircumstantial evidence and reasonable inferences arising from th[e] evidence can constitute satisfactory proof of the elements of a crime." [*People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010) (citations omitted; alteration in original).]

We review the issue de novo. *Id*. at 175-176. "This Court will not interfere with the jury's role of determining the weight of the evidence or deciding the credibility of the witnesses." *People v Fletcher*, 260 Mich App 531, 561; 679 NW2d 127 (2004).

The elements of first-degree CSC under MCL 750.520b(1)(b)(*ii*) are "(1) sexual penetration, (2) a victim who is at least 13 years old but less than 16 years old, and (3) a relationship by blood or affinity to the fourth degree between the victim and the defendant." *People v Zajaczkowski*, 493 Mich 6, 12; 825 NW2d 554 (2012). " 'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r).

Defendant does not dispute the age of the victim or his relationship with the victim, but argues that the victim's testimony was uncorroborated and inherently incredible because (1) defendant was excluded as the donor of the sperm on the dental floss, (2) his DNA on the carpet had no evidentiary value because the pattern of the semen on the carpet revealed that it had been intentionally placed there, (3) his DNA on the gray shirt had no evidentiary value because the location of the semen on the shirt revealed that it had been intentionally placed there, and (4) several items that the victim testified about, including candy, condoms, a pipe, and a backpack, were not found during the search of the house.

The victim's testimony that defendant licked her vagina and made her suck his penis both in the basement and in her room was sufficient evidence of the charges against him. See MCL 750.520h. In addition to the victim's testimony, there was corroborating evidence found at the

location, including a lighter that resembled a gun, Seroquel pills prescribed to defendant, and a pill in the victim's makeup compact. Although some items mentioned by the victim were not found, this did not render the victim's testimony inherently incredible. Defendant's DNA was also found on the shirt and the carpet, and the carpet also had the victim's DNA, which was consistent with the victim's testimony. Contrary to defendant's assertion, there was no evidence introduced at trial that the semen on either the carpet or the shirt was intentionally placed. Moreover, we may not interfere with the jury's role of determining the weight of the evidence. *Fletcher*, 260 Mich App at 561. Also contrary to defendant's argument, Morgan was unable to say that defendant's sperm was not on the dental floss. Morgan testified that only the victim's DNA was detected on the dental floss, so defendant was excluded as the donor, as all males were excluded. Finally, defendant admitted that he woke up to the victim putting his penis in her mouth.

## D. REQUEST FOR A PHOTO BODY LINEUP

Lastly, defendant contends that the trial court abused its discretion by denying his motion for a photo body lineup. We disagree.

"The decision to grant the defendant's motion for a lineup lies within the trial court's discretion." *People v McAllister*, 241 Mich App 466, 471; 616 NW2d 203 (2000), remanded on other grounds 465 Mich 884 (2001). "A right to a lineup arises when eyewitness identification has been shown to be a material issue and when there is a reasonable likelihood of mistaken identification that a lineup would tend to resolve." *Id*.

In this case, eyewitness identification was not a material issue because the victim knew the perpetrator and there was also DNA evidence linking defendant to the crimes. There was also no reasonable likelihood of mistaken identification that a photo body lineup would tend to resolve because it is highly likely that the victim would have been unable to identify defendant's private area in a photographic lineup. Defendant does not even argue that he has an identifiable characteristic that the victim would have observed. Finally, even if the trial court abused its discretion in denying defendant's request, any error was harmless because even if the victim had been unable to identify defendant's genitals, the other evidence against him was overwhelming.

We affirm defendant's convictions, but remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Kurtis T. Wilder
/s/ Jane M. Beckering